# Exhibit A

## CLASS ACTION SETTLEMENT AGREEMENT

THIS CLASS ACTION SETTLEMENT AGREEMENT ("Agreement"), executed on September___, 2016 is made and entered into by Shelly Stivers (referred to throughout this Agreement as "Named Plaintiff") and the Settlement Class and Collective (as defined below in paragraph 2) on the one hand, and the Illinois State Toll Highway Authority (referred to throughout this Agreement as "Defendant") on the other hand, to voluntarily and completely settle and resolve the individual and class claims as specified below.

## RECITALS

WHEREAS, Named Plaintiff, on behalf of herself and other similarly-situated individuals, filed a civil action in the Northern District of Illinois currently captioned *Shelly Stivers, et. al. v. Illinois State Toll Highway Authority.*, Case No. 15-cv-09030, raising unpaid overtime wage claims as a § 216(b) collective action under the Fair Labor Standards Act ("FLSA"), and Rule 23 class action under the Illinois Minimum Wage Law ("IMWL"), as alleged in the Complaint ("Lawsuit");

WHEREAS, Defendant specifically denies the claims raised in the Lawsuit and believes it has defenses thereto, and further specifically denies any wrongdoing or legal liability to any individual or group of individuals, including but not limited to Named Plaintiff and members of the Settlement Class and Collective, arising out of the allegations, theories, and/or claims raised in the Lawsuit, including but not limited to those relating to unpaid overtime wages;

WHEREAS, the parties wish to avoid further controversy, litigation, legal fees and costs, and risk inherent in any litigation, and enter this Agreement to finally and fully resolve all claims by and between Named Plaintiff on her behalf and on behalf of the Settlement Class and Collective, on the one hand, and Defendant on the other hand, including but not limited to any and all claims for unpaid overtime, liquidated damages and/or statutory penalties and the like, and attorneys' fees and costs against Defendant as asserted in the Lawsuit;

WHEREAS, the Parties agree to the certification of the Settlement Class and Collective for the sole purpose of effectuating this Agreement;

WHEREAS, this Agreement is not intended to constitute, and does not constitute, any admission by Defendant of any liability or violation of any federal or state laws, statutes or regulations, or as to the merits, validity or accuracy of any of the allegations, theories, and/or claims raised in the Lawsuit.

## PROVISIONS

NOW, THEREFORE, in consideration of the provisions, covenants and mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.      Recitals. The Recitals set forth above, including all definitions designated or stated therein, are incorporated by reference as integral provisions of this Agreement.

2.      Settlement Class and Collective Defined. The Settlement Class is defined as all individuals who were employed by Defendant as a toll collector and/or senior toll collector at any time during the period of October 13, 2012 until March 14, 2016 (hereinafter, "Settlement Class"). The Collective consists of all individuals who previously returned valid opt-in plaintiff consent forms, a list of whom is attached as Exhibit A.

3.      Good Faith Settlement Negotiations. The parties' settlement negotiations have been conducted in good faith and at arm's length, and Named Plaintiff, for her own benefit and in her representative capacity on behalf of the Settlement Class and Collective, and her attorneys believe the settlement to be fair, adequate and reasonable and in the best interests of the Named Plaintiff and the Settlement Class and Collective. The settlement was reached after mediation before Mediator Lynn Cohn. This Agreement is intended to memorialize the terms of the settlement agreed to by the parties at the conclusion of settlement negotiations.

Siegel & Dolan Ltd. ("Class Counsel") has conducted a thorough investigation into the facts of the Lawsuit, and have diligently pursued investigation and prosecution of Class Members' claims against Defendant. Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant for the consideration and on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interest of the Class and Collective in light of all known facts and circumstances, including the risk of significant delay, the risk of loss or limited recovery, and the defenses asserted by Defendants.

Defendant and Defendant's counsel also agree the settlement as stated in this Agreement is reasonable and fair. Defendant has denied and continues to deny any liability with respect to any of the facts or claims raised against them and have various affirmative defenses to the pleaded claims. Nonetheless, Defendant has concluded after substantial investigation and negotiation, after carefully considering the circumstances of the claims and defenses being asserted herein, the substantial costs associated with proceeding that it is in its best interest to enter into this settlement in order to avoid further expense, inconvenience and burden of protracted litigation, and the distraction and diversion associated with litigation, to avoid the risks inherent in uncertain complex litigation, and to avoid the expense and risks inherent in any possible future litigation amongst parties raising similar claims.

4.      Settlement Fund. The total amount to be paid by Defendant in settlement of the claims resolved by this Agreement is One Million Four Hundred Thousand Dollars ($1,400,000) (the "Settlement Fund"). Settlement awards will be distributed in accordance with the provisions below.

5.      Settlement Administrator. The parties agree that Simpluris, Inc., shall act as the Settlement Administrator, identified hereinafter referred to as the "Administrator," to issue notices to the Settlement Class, receive and process Claims Forms, and administer the Settlement payments to the Settlement Class and Collective. The Administrator's reasonable fees and costs will be paid from the Settlement Fund.

**6.**     <u>Preliminary Approval.</u> Promptly after this Agreement has been executed by Defendant and Named Plaintiff, Class Counsel will file a motion asking the Court to enter an order (the "Preliminary Approval Order") granting preliminary approval of this Agreement, authorizing issuance of the notices provided for in Section 8 below, and directing the Parties to take the other steps set forth in this Agreement preceding entry of a Final Order approving the settlement.

**7.**     <u>Class List.</u>  Within seven days after entry of the Preliminary Approval Order, Defendant will provide to the Administrator and Class Counsel a list (the "Class List"), in Microsoft Excel format, of the Settlement Class Members that shall include each individual's name, a statement of the total time worked during the period of October 13, 2012 until March 14, 2016, and last known address. Any Settlement Class Member who Defendant fails to identify in the Class List will not be bound by this Settlement, and retains all rights under the Fair Labor Standards Act, Illinois Minimum Wage Law, Illinois Wage Payment and Collection Act, and any applicable wage laws.

**8.**     <u>Class Notice.</u>  The Administrator will mail the Class Notice and Claim Form attached hereto as Exhibit 2 to all Settlement Class Members by U.S. Mail, postage prepaid, to their last known address within twenty-one days after entry of the Preliminary Approval Order (the "Notice Deadline"). The Class Notice for each Class Member will include an estimate of the Class member's potential settlement payment based upon the assumption that all Class Members file timely claims, and that the Court approves payments of attorneys' fees and costs and a service award for the Named Plaintiff in the maximum amounts set forth in this Agreement, and fees and costs of the Administrator totaling an estimated $16,000. If any class member's Notice and Claim Form is returned as undeliverable within twenty-eight days after the Notice Deadline, the Administrator will use reasonable efforts to identify a valid mailing address for the Class Member, and will issue a second mailing to the Class Member within thirty-five days after Notice Deadline.

**9.**      <u>Claims Process.</u> To receive a portion of the Settlement Fund, Class Members must submit a completed Claim Form to the Administrator by U.S. mail, fax, e-mail or online, postmarked or time stamped no later than sixty days after the Notice Deadline (the "Response Deadline"). The Administrator will make all Claim Forms received available to Class Counsel and Defendant's Counsel within 7 days after they are received by the Administrator. Defendant will have seven days from delivery of any Claim Form to notify Class Counsel of any challenge to the validity of the claim. Such notice will be made in writing and will state the basis for the objection. Counsel for the parties will confer in good faith to resolve any disputes regarding the validity of claims. If they are unable to resolve any such disputes after good-faith consultation, the dispute will be submitted to the Court for resolution. If Class Counsel or the Court agrees with Defendant's determination that any claim is invalid, the Administrator will mail the claimant a notice of rejection stating the reasons for the rejection. Class Members who return a valid Claim Form to the Administrator as provided herein postmarked or time stamped on or before the Response Deadline are referred to as "Claiming Class Members." The Administrator will provide Class Counsel and Defendants' Counsel a final list of all Claiming Class Members fourteen days after the Response Deadline.

**10.**     <u>Service Award.</u>   Named Plaintiff will receive a Service Award in an amount to be determined by the Court but not to exceed Ten Thousand and 00/100 Dollars ($10,000), to be

paid from the Settlement Fund. The Administrator will issue Named Plaintiff an IRS Form 1099 for her Service Award.

11.     Attorneys' Fees and Costs.  Class Counsel, Siegel & Dolan Ltd., will petition the Court to approve an award of $466,000 (representing 1/3 of the Settlement Fund) in attorneys' fees and costs, which shall be paid from the Settlement Fund.  Defendant takes no position on the appropriateness of this award, and will not oppose Class Counsel's petition. Should the Court for whatever reason reduce the amount of attorneys' fees to which it believes Class Counsel is entitled, this settlement agreement will remain in effect and will under no circumstances be deemed null and void.

12.     Fees and Expenses of the Administrator. The Administrator's reasonable fees and costs will be paid from the Settlement Fund. The Administrator estimates that its reasonable fees and costs will be $16,000.  The Administrator shall provide a final invoice for its reasonable fees and costs within fourteen days after the Response Deadline.  The final invoice shall include all work necessary to conclude the Administrator's duties and responsibilities pursuant to the settlement, to calculate settlement payments, issuance and mailing of settlement payment checks, to do the necessary tax reporting on such payments, answer class member questions, etc.

13.     Calculation of Individual Settlement Awards. Each Claiming Class Member will receive an Individual Settlement Award calculated as a proportionate share of the Settlement Fund after the Settlement Fund has been reduced by (1) court-approved attorneys' fees and costs (as specified in Section 11); (2) court-approved service award (as specified in Section 10); and (3) the reasonable fees and costs of the Administrator (as specified in Section 12). The Settlement Fund as reduced by the foregoing amounts shall be referred to as the "Net Settlement Amount." The Individual Settlement Award for each Claiming Class Members shall be determined according to the formula below:

        A.     The Net Settlement Amount will be distributed to the Claiming Class Members based on their actual hours worked on a pro rata basis.  Specifically, each Claiming Class Member will receive one share or partial share for each hour (rounded to the nearest tenth of an hour) worked during the Class Period.  Those Claiming Class Members who previously submitted consent forms to join the FLSA collective action ("Opt-In Plaintiffs") will receive a multiplier for their shares of 1.25. The Administrator shall determine the value of each share by dividing the Net Settlement Amount by the sum total of all Claiming Class Members' shares ("Share Value").  The Claiming Class Member's Individual Settlement Award shall be calculated by multiplying the number of his/her shares by the Share Value.

        B.     Each Claiming Class Member's Individual Settlement Award will be paid as follows:

                (1)     One half of each Claiming Class Member's Individual Settlement Award will be taxable wages, and will be paid directly by payroll check issued by the Illinois State Comptroller's Office. This portion of the Individual Settlement Award will be subject to withholding for the employee share of all payroll taxes, pension contributions (if applicable), and deductions pursuant to the Comptroller's Offset System. Defendant shall be

responsible for all employer-paid taxes on this portion of the Individual Settlement Award, including FICA, FUTA, state unemployment, and employer pension contributions. The checks for these payments are referred to as the "Payroll Checks."

**(2)** The other half of each Claiming Class Member's Individual Settlement Award will be paid as compensation for liquidated damages and statutory penalties, will not be subject to withholding, and will be reported on an IRS Form 1099. The checks for these payments will be referred to as the "Non-Payroll Checks." The Administrator will be responsible for issuing the checks and Forms 1099 for these payments.

**C.** Within seven days after entry of the Final Approval Order, the Administrator will provide Class Counsel and Defendant's Counsel with a statement including:

**(1)** The gross amount of each Claiming Class Member's Individual Settlement Award, calculated as provided in this Section 13, and of the gross amount of each Payroll Check and Non-Payroll Check to be issued to each Claiming Class Member.

**(2)** The gross amount to be transmitted by Defendant to fund the Settlement Account as provided in Section 14.A below.

**14.** <u>Distribution of the Settlement Fund.</u>

**A.** Within thirty days after the Effective Date, Defendant will transmit an amount equal to the sum of (1) court-approved attorneys' fees and costs (as specified in Section 11); (2) court-approved service award (as specified in Section 10); (3) the reasonable fees and costs of the Administrator (as specified in Section 12), and (4) one-half of the Net Settlement Fund, to an account established and administered by the Administrator for purposes of this settlement (the "Settlement Account"). Also within thirty days after the Effective Date, Defendant will deliver the Payroll Checks to the Administrator.

**B.** Within seven days after receipt of the funds and Payroll Checks as provided in Section 14.A above, the Administrator will issue the Non-Payroll Checks from the Settlement Account, and will mail the Payroll Check and Non-Payroll Check to each Claiming Class Member. The Administrator will also issue payment to Class Counsel for attorneys' fees and costs approved by the Court, and to the Named Plaintiff for any service award approved by the Court, and to the Administrator for its fees and costs approved by the Court.

**15.** <u>Unclaimed Payments.</u> The Settlement Administrator will make reasonable efforts to locate any Claiming Class Member whose checks are returned as undeliverable within 45 days after the initial mailing. If any of the checks cannot be delivered despite such reasonable efforts, the Settlement Administrator will hold the checks for the Claiming Class Member until 120 days after the initial mailing of the checks. If any undelivered Payroll Checks remain unclaimed 120 days after the initial mailing, the Settlement Administrator will return those checks to the Defendant. If any of the Non-Payroll Checks remain unclaimed 120 days after the initial mailing, or are not negotiated within 120 days after the initial mailing, the Settlement Administrator will

stop payment on the checks. The Settlement Administrator will return any amounts remaining in the Settlement Fund to Defendant 150 days after the initial mailing of the Non-Payroll Checks, along with a report identifying the payees and amounts of the undelivered or otherwise unnegotiated checks. Defendant will hold the funds for any returned or unnegotiated Payroll Checks and any amount returned from the Settlement Fund for the benefit of payees of those checks, and will issue replacement checks to the named payees upon request. Defendant may require reasonable documentation from a payee to verify their identity and entitlement to issuance of a replacement check under this provision. Defendant will turn over any checks or funds held for the benefit of a Claiming Class Member to the Illinois State Treasurer's unclaimed property program pursuant to the Uniform Disposition of Unclaimed Property Act or as otherwise provided for by the Treasurer's Office, in which case Defendant will be released from any further obligation to that individual under this Agreement. Class Counsel will attempt to contact any Class Claimants who fail to cash their checks in order to advise them that they will need to request new checks from Defendant for their portion of the Settlement Fund.

**16.** <u>Release</u>. Upon final approval of this Agreement, the court shall enter a judgment wherein:

> a. The Named Plaintiff, along with her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, waive, release, and discharge any and all claims against Defendant, including Defendant's current and former representatives, successors, assigns, employees, managers, agents, officers, directors, and attorneys. This release is comprehensive and includes all claims (including claims for costs or attorneys' fees), damages, causes of action, and disputes of any kind whatsoever, whether known or unknown, anticipated or unanticipated, contingent, or otherwise, occurring or that could be alleged to have occurred prior to execution of this settlement agreement. Named Plaintiff understands and agrees the claims she is releasing include (but are not limited to) any and all claims for wages, employee benefits, bonus payments, reinstatement, back pay, front pay, injunctive relief, equitable relief and damages arising under: (a) any federal, state, local or foreign law relating to employment discrimination, retaliation or employee rights (including the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and Family Medical Leave Act,); (b) any federal, state, local or foreign law relating to employment or termination rights and/or benefits (including the Employee Retirement Income Security Act of 1974 ("**ERISA**"), the Worker Adjustment and Notification Act, and any state equivalent); (c) any federal, state, local, or foreign law relating to wage and hour law (including the Equal Pay Act and the Fair Labor Standards Act); and (d) any other basis for legal or equitable relief whether based on express or implied contract, tort, statute or other legal or equitable ground that in any way relates to the Named Plaintiff's employment with Defendant, reputation, benefits, compensation, separation from employment or any claim that the Named Plaintiff was retaliated against for engaging in protected activity. This release will not apply to any pending claim by the Named Plaintiff for benefits under the Workers' Compensation Act.

b. The Claiming Class Members, including the members of the Collective, along with their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, release and discharge including Defendant's current and former representatives, successors, assigns, employees, managers, agents, officers, directors, and attorneys, from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, liquidated damages, damages, causes of action, of whatever kind or nature, whether known or unknown, that they have, may have had, or could have alleged or did allege in the Complaint or subsequent amendments that relate in any way to the payment of wages, deductions from wages, payment of overtime compensation or the failure to pay overtime compensation under the Fair Labor Standards Act, the Illinois Minimum Wage Law or the Illinois Wage Payment and Collection Act between October 13, 2012 and the date the Court enters the Final Approval Order and Fed. R. Civ. P. 54 judgment. The matters released by the Claiming Class Members also include any breach of contract claims and any state common law wage claims, including, but not limited to claims of unjust enrichment and *quantum meruit*; and any and all claims pursuant to or derived from The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, that arise from any alleged failure to pay wages, including any claims for benefits under any benefit plans subject to ERISA that arise from any such alleged failure.

c. The Settlement Class members who do not opt out of the Settlement Class, but fail to submit claim forms, including any members of the Collective that do not submit a claim form, along with their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, release and discharge Defendant, including Defendant's current and former representatives, successors, assigns, employees, managers, agents, officers, directors, and attorneys, from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, liquidated damages, damages, causes of action, of whatever kind or nature, whether known or unknown, that they have, may have had, or could have alleged or did allege in the Complaint or subsequent amendments that relate in any way to the payment of wages, deductions from wages, payment of overtime compensation or the failure to pay overtime compensation under the Illinois Minimum Wage Law or the Illinois Wage Payment and Collection Act between October 13, 2012 and the date the Court enters the Final Approval Order and Fed. R. Civ. P. 54 judgment. The matters released also include any breach of contract claims and any state common law wage claims, including, but not limited to claims of unjust enrichment and *quantum meruit*; and any and all claims pursuant to or derived from The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, that arise from any alleged failure to pay wages, including any claims for benefits under any benefit plans subject to ERISA that arise from any such alleged failure. However, this release shall not include any claims under the Fair Labor Standards Act.

17.     Final Order Approving Settlement. The Parties will ask the Court to set a Fairness Hearing no less than 110 days after entry of the Preliminary Approval Order.  No fewer than seven (7) days before the Fairness Hearing (or at such other time as the Court may order), Class Counsel shall file a motion for final approval of the settlement.  Upon the court's final approval of this Agreement, judgment shall be entered providing for, among other things: (i) a determination that the certification of the Settlement Class and Collective was appropriate for the purpose of effectuating this Agreement; (ii) entry of a final judgment pursuant to Fed. R.  Civ. P. 54 in this Lawsuit dismissing all Plaintiff's, Collective Members' and Settlement Class Members' claims with prejudice, with the exception of the claims of those Settlement Class Members that opted out by the deadline, without the assessment of costs; (iii) the award of attorneys' fees and costs under Section 11; a Service Award to the Named Plaintiff under Section 10; and fees and costs of the Administrator under Section 12; and (iv) the release of the claims of the Named Plaintiff, Claiming Class Members and Settlement Class Members that did not opt out, consistent with Section 16. To the extent permissible, the Court shall retain jurisdiction for 210 days after the entry of the Final Approval Order for the sole purpose of implementation and enforcement of the terms of the Settlement, after which time the dismissal will automatically convert to a dismissal with prejudice, without further order from the Court.

18.     Effect of Non-Approval. This Agreement is expressly contingent on final approval by the Court.  If this Agreement is not approved by the court or one of the conditions for the Effective Date in Section 21 cannot be met, this Agreement shall be cancelled and terminated and shall not be used in the Lawsuit or in any other proceeding or for any other purpose, and any orders entered by the court in accordance with the terms of this Agreement shall be vacated *nunc pro tunc* with the parties reverting to their original positions as though this Agreement had never been executed.

19.     Right of Exclusion.  All Settlement Class Members who properly file a timely written request for exclusion from the Settlement Class shall be excluded from the Settlement Class and shall have no rights as Settlement Class Members pursuant to this Agreement.  To be effective, the request for exclusion must (i) include the Settlement Class Member's full name, address and telephone number, (ii) dates of employment with Defendants, and, (iii) specifically state his/her desire to be excluded from the settlement.  The request must be mailed to the Administrator, Class Counsel and Counsel for Defendants.  A request for exclusion that does not include all of the foregoing information, or that is sent to an address other than the one designated in the Class Notice, or that is not postmarked or time stamped by the Response Deadline, shall be invalid and the person(s) serving such a request shall remain a Class Member and shall be bound as a Class Member by the settlement of the Lawsuit, if approved. The Administrator shall provide a list of all individuals who have successfully opted out of the settlement to the Parties' counsel within 14 days after the Response Deadline.

20.     Objections to the Settlement.

        A.      Any Settlement Class Member object to the proposed Settlement by filing a written objection with the Clerk of Court, in accordance with the requirements set forth below, by the Response Deadline.  Any Settlement Class Member who does not provide a written objection in the manner described in this Section shall be deemed to have waived any objection

and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Settlement or the award of any attorneys' fees and costs and/or service award.

 **B.** To be heard at the Final Approval Hearing, the Settlement Class Member must make any objection in writing and file it with the Court by the Response Deadline. The objection must also be mailed to Class Counsel and Defendant's Counsel at the addresses listed in Section 31 below, postmarked not later than the last day to file the objection. An objection must: (a) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Settlement Class Member; (b) include a statement of such Settlement Class Member's specific objections; and (c) state the grounds for objection, as well as identify any documents which such objector desires the Court to consider. A Settlement Class Member who files a timely objection as provided in this Section may, but need not appear in person at the Final Approval Hearing. Any objecting Settlement Class Member who wishes to address the Court at the Final Approval Hearing must file with the Court and serve on all parties a Notice of Intention to Appear.

**21.** <u>Effective Date of Agreement</u>. The date seven (7) days after the last of these conditions have been met, will be deemed the "Effective Date.": (i) the Court enters a Final Approval Order, and (ii) the date for filing an appeal from such Final Approval Order has expired or, if there are appeals, the settlement and judgment has been affirmed in all material respects by the appellate court of last resort to which such appeals have been taken and such affirmances are no longer subject to further appeal or review.

**22.** <u>Advice of Counsel</u>. The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released. The Parties have read and understand fully the above and foregoing Agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

**23.** <u>Authority</u>. The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

**24.** <u>Benefit of this Agreement</u>. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, the members of the Settlement Class not opting out, and each of their successors, predecessors, affiliates, heirs, executors and assigns.

**25.** <u>Entire Agreement</u>. Any and all prior understandings and agreements between the Parties with respect to the subject matter of this Agreement are merged into and with this Agreement, which fully and completely expresses the entire agreement and understanding of the Parties with respect to the subject matter hereof. This Agreement may be amended, modified or changed only by a written instrument or instruments executed by duly authorized officers or other representatives of all Parties expressly amending, modifying or changing this Agreement and may not be amended, modified or changed orally.

**26.** <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

**27.**   Severability.  Should any provision of this Agreement be declared or be determined by any court or agency to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby, and said illegal and invalid provision or term shall be deemed not to be part of this Agreement, provided that such portion of this Agreement that has or may become unenforceable is not a material part or the essence of any party's bargain hereunder.

**28.**   Counterparts.  This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Signatures provided by facsimile or other electronic means (*i.e.*, Adobe Acrobat, etc.) shall be deemed legal and binding for all purposes.

**29.**   Headings.  The headings in this Agreement are for convenience of reference only and are not to be taken to be a part of the provisions of this Agreement, nor to control or affect meanings, constructions or the effect of the same.

**30.**   Non-Admission of Liability.  Neither the making of this Agreement nor anything stated in this Agreement shall be construed as an admission by Defendant of any fact alleged by Plaintiff or of the merits of any claim of liability, Defendant expressly denying all such facts and claims of liability.  This Agreement shall not constitute evidence of any violation of law by Defendant.  The Agreement shall not be admissible in any case other than this Lawsuit and only for the purpose of enforcement of this Agreement.

**31.**   Notice to Counsel.   Where notice is required to be provided to counsel or where materials are required to be sent to counsel, then such requirements shall be satisfied by providing such notice or sending such materials to:


In the case of Defendant:                    In the case of Plaintiff and the Class:
William R. Pokorny                           Bradley Manewith
Franczek Radelet P.C.                        Siegel & Dolan Ltd.
300 South Wacker Drive, Suite 3400           150 North Wacker Drive, Suite 1100
Chicago, IL 60606                            Chicago, Illinois, 60606


IN WITNESS WHEREOF, and intending to be legally bound hereby, Named Plaintiffs and Defendants have executed the foregoing Agreement.


_____          Dated: _____
Shelly Stivers, Named Plaintiff



_____          Dated: _____
On behalf of the Illinois State Toll
Highway Authority
[INSERT NAME]
[INSERT TITLE]

# Exhibit B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHELLY STIVERS, on behalf of herself and all other similarly situated persons, known and unknown, | |
| Plaintiff, | No. 15-cv-09030 |
| v. | Judge Matthew F. Kennelly<br>Magistrate Judge Maria Valdez |
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY, | |
| Defendant. | |

**NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT**

*THIS NOTICE IS TO INFORM YOU OF A PENDING CLASS ACTION AND A PROPOSED SETTLEMENT AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS CONCERNING THE SETTLEMENT AS A POTENTIAL CLASS MEMBER.*

*YOUR PORTION OF THE SETTLEMENT IS ESTIMATED TO BE AT LEAST [INSERT AMOUNT], BUT ONLY IF YOU SIGN AND RETURN THE CLAIM AND TAX FORMS.*

*IF YOU WISH TO RECEIVE YOUR PORTION OF THE CLASS SETTLEMENT PROCEEDS, YOU MUST COMPLETE AND RETURN THE CLAIM FORM BY **[RESPONSE DEADLINE]**.*

**TO:**     [Insert Name and Address]

**RE:**     Settlement of Claims for Alleged Unpaid Overtime Wages

This notice is to inform you that a proposed settlement has been reached with the Illinois State Toll Highway Authority ("ISTHA") covering the period of time from October 13, 2012 through March 14, 2016 ("Class Period"). This is not a notice of a claim against you. A federal court has authorized this notice. This is not a solicitation from a lawyer.

You have been identified as a current or former toll collector and/or senior toll collector that was employed by ISTHA during the Class Period. As a result, you are entitled to a portion of the settlement. Below are answers to some questions you may have regarding the lawsuit, the settlement of the lawsuit, and your eligibility to receive money as a result of the settlement.

***Why am I receiving this Notice?***

A class action lawsuit was filed by Plaintiff, Shelly Stivers, against ISTHA on October 13, 2015, alleging that toll collectors and senior toll collectors (collectively "toll collectors") were not paid for work performed before and after their assigned shifts, including time spent completing required paperwork and obtaining/returning their money drawers. As a result,

Plaintiff alleges that ISTHA violated the Illinois Minimum Wage Law ("IMWL") and Fair Labor Standards Act ("FLSA") because toll collectors are not paid one and one-half times their regular hourly rate ("overtime") for all work performed in excess of forty (40) hours per week. ISTHA denies that it violated the IMWL and/or FLSA.

After extensive negotiations, the Parties have reached a proposed settlement that covers all members of the Settlement Class during the Class Period.

This notice describes the settlement, which is pending final Court approval, and informs you of how to receive your allocated share of the settlement, if you are eligible. This notice also provides you an opportunity to object to such settlement, if you so choose, or to opt out of such settlement.

You can take part in the Settlement by returning the enclosed Claim Form and Individual Release ("Claim Form") and W-4 and W-9 tax forms to Simpluris, Inc. You may also submit your Claim Form online at: [INSERT WEBSITE]. Your Claim Form must be received or postmarked no later than [60 days after mailing date].

### *What is the Settlement Amount and How will it be Distributed?*

Under the proposed settlement, ISTHA will pay $1,400,000 ("the Settlement Amount"). A hearing on the final approval of this settlement is currently scheduled for [INSERT DATE] at *** a.m. Subject to Court approval, up to one-third of the Settlement Amount will be paid from the Settlement Amount (*i.e.*, $466,000) for the attorneys' fees, expenses and costs for bringing the lawsuit. Fees in the estimated amount of $16,000 will also be paid to Simpluris, Inc. for administering the settlement. Additionally, subject to Court approval, up to $10,000.00 will be paid from the Settlement Amount to Shelly Stivers as an incentive payment for her services in bringing this lawsuit and serving as Class Representative. The remainder of the Settlement Amount ("the Net Settlement Amount") will be allocated as follows.

The Net Settlement Amount and will be distributed to Settlement Class Members who submit timely claims as described below. Settlement Class Members who have submitted timely Claim Forms will receive a pro rata share of the Net Settlement Amount based on the number of hours they worked during the Class Period as a toll collector or senior toll collector. Settlement Class Members that previously completed and returned FLSA opt-in consent forms will receive a multiplier of 1.25 for their *pro rata* shares. The exact amount that you will receive from the Net Settlement Amount will depend upon the number of individuals who submit timely and valid Claim Forms.

The settlement shares will be paid shortly after ISTHA makes its payment in full. This is a non-reversionary settlement meaning that any remaining amounts in the Net Settlement Amount will not be returned to ISTHA.

The class administrator will forward settlement distributions directly to eligible claimants. Fifty percent (50%) of your settlement share will be taxable, and ISTHA will make appropriate withholdings from your distribution. The remaining fifty percent (50%) of your settlement share is allocated as interest, penalties and liquidated damages, not wages. The remaining amount also will be taxable, but withholdings will not be taken out of this amount.

2

After receiving your distribution, we strongly encourage you to consult with an accountant or tax advisor.

Class Counsel strongly believes that this is a favorable settlement and will constitute a significant percentage of actual damages that you may have incurred as a result of any alleged unpaid work. Based upon their many hours of work on this litigation, Class Counsel have concluded that there is a risk that Plaintiffs would not prevail in this litigation and, given that the calculation of potential damages is difficult, believe that the settlement is fair and reasonable and is favorable to you.

If the Court grants final approval of the Settlement, the lawsuit will be dismissed with prejudice against ISTHA, and unless you specifically exclude yourself from the settlement as described below, you will fully release and discharge ISTHA from any and all claims that are asserted in the lawsuit or that arise from or are related to the facts alleged in the lawsuit. When claims are "released," that means that a person covered by the release cannot sue ISTHA for any of the claims that are covered by the release. The claims you are releasing as a member of this settlement are listed at the bottom of the claim form you are required to sign to receive your share of the Settlement.

You should be aware that Illinois law prohibits any retaliation against any individual because of their participation in this type of litigation or for electing to take a settlement distribution. The ISTHA encourages all members of the Settlement Class to claim their share of the settlement without any fear of retaliation.

### *What are my Options?*

You can participate in the settlement or, if you do not want to accept the settlement, you have the right to object to the fairness of this settlement, or to opt out of the settlement. To do so, you must follow the instructions described below.

**In order to participate in the settlement and receive your payment, you must complete, sign, and send the attached Claim Form to the class administrator by U.S. mail, fax, or e-mail at the address below, or complete the online form at: [INSERT WEBSITE]. The forms must be received by Simpluris, Inc. or postmarked no later than [Response Deadline].**

> **Simpluris, Inc.**
> **INSERT ADDRESS, FAX, E-MAIL**

If you wish to object to the proposed settlement, you must file your written objection with the Clerk of the United States District Court for the Northern District of Illinois by [Response Deadline]. Your written objection must set forth any legal or factual arguments supporting the objection. Additionally, you must serve copies of your written objection upon Bradley Manewith at Siegel & Dolan Ltd., 150 North Wacker Drive, Suite 1100, Chicago, IL 60606, (Class Counsel) and William R. Pokorny, Franczek Radelet P.C., 300 South Wacker Drive, Suite 3400, Chicago, IL 60606 (counsel for ISTHA), by [Response Deadline].

There will be a court hearing on [INSERT DATE AND TIME], at the United States District Court at 219 South Dearborn Street, Chicago, Illinois 60604, Courtroom 2103, at which time Federal Judge Matthew F. Kennelly will decide whether to grant final approval of the settlement.  The hearing is public and you are free to attend. If you file a written objection as specified above, you do not need to attend the hearing in order for the Court to consider your written objection. If you wish to address the Court at the hearing, you must file a written a Notice of Intention to Appear with the Clerk of the Court and serve the notice upon Class Counsel and Counsel for the ISTHA prior to the hearing.

You may opt out of the settlement by submitting a request for exclusion to the class administrator as soon as possible, but no later than **[Response Deadline]**.  This request for exclusion should include your name and address, and should state:  (1) that you are requesting to be excluded from the class settlement in the case *Stivers v. Illinois State Toll Highway Authority.*, Civil Action No. 15-cv-09030; and (2) that you understand that by excluding yourself from the settlement, you will receive no funds in conjunction with the case.  If you exclude yourself, you will not participate in these proceedings, nor will you receive any recovery from the Net Settlement Amount.  You will retain the right to assert any Illinois state law or federal claims you may have against ISTHA relating to the payment of wages or hours of work. **If you decide to opt out of the settlement, Class Counsel will no longer represent you regarding your claims against ISTHA, and you will not receive any payment under this settlement.  You have the right to consult with an attorney of your choosing should you care to do so.**

If you do not return the Claim Form enclosed with this Notice you will not receive any money from this Settlement.  **You will, however, remain a member of the Settlement Class, and therefore will release your claims against ISTHA**.

If you have any questions about the settlement, please feel free to contact Class Counsel at:

Bradley Manewith
Siegel & Dolan Ltd.
150 North Wacker Drive, Suite 1100
Chicago, IL  60606
(312) 878-3210
bmanewith@msiegellaw.com.

You may also get additional information through the settlement website at: [INSERT WEBSITE ADDRESS].

**Please do not contact the Court Clerk, the Judge, or defense counsel; they are not in a position to give you any advice about this settlement.**

Dated: _____            BY ORDER OF THE COURT
                                                                                    Clerk of the Court

4

# Exhibit C

## CLAIM FORM AND INDIVIDUAL RELEASE

TO: [First Name] [MI] [Last Name]
[Address Line 1]
[Address Line 2]
[City], [State] [Zip]

In order to claim a share of the Net Settlement Amount from the settlement of the lawsuit filed as a class action against Illinois State Toll Highway Authority ("ISTHA") you must complete and return this form (and W-4 and W-9 tax forms) to the class administrator at the address listed below. Claim forms must be submitted by mail, fax, email, or online. All members of the Settlement Class must return the form to the address below, or have it postmarked, by [60 days after mailing] in order to claim a share of the settlement proceeds.

**CLASS MEMBERS WHO DO NOT RETURN THIS FORM POSTMARKED OR TIME STAMPED BY [INSERT DATE] WILL NOT BE ELIGIBLE TO RECEIVE THEIR PORTION OF THE SETTLEMENT FUNDS AND MAY FOREVER LOSE THEIR RIGHT TO RECOVER THEIR OVERTIME WAGES.**

If submitting this form via mail, fax, or e-mail, you **must** send it to:

[INSERT SIMPLURIS, INC. CONTACT INFORMATION]

**1.      Claimant Information:**
☐ **The Name/Address information at the top of this form is current and correct.**
☐ **Please update my name/address information with the following:**

_____        _____        _____
First Name                              Middle Name             Last Name

Address (Line 1) _____

Address (Line 2) _____

_____        _____        _____
City                                    State           Zip Code

**Please provide the following additional contact information:**

Home Phone: _____ Cell Phone: _____

Email address: _____

## 2.    Affirmation:

**TO QUALIFY FOR YOUR SHARE OF THE SETTLEMENT, YOU MUST AGREE TO THE FOLLOWING CONDITIONS BY SIGNING ON THE LINE BELOW:**

I consent and agree to join the above referenced lawsuit for alleged uncompensated time for work performed at ISTHA during the Class Period.

I hereby agree to be bound by the collective and class action settlement in the above referenced case.  I understand that by signing below, I am releasing ISTHA (together with its current and former managers, administrators, representatives, agents, attorneys, officers, directors, successors and assigns) from all claims related to unpaid wages or overtime pay that were alleged or could have been alleged in *Stivers, et al. v. Illinois State Toll Highway Authority.*, No. 15-CV-009030 (N.D. Ill.) ("Lawsuit"), including but not limited to all claims related to unpaid wages or overtime pay arising under the Fair Labor Standards Act, Illinois Minimum Wage Law, and/or state or local law, penalties, interest, damages, including liquidated damages, attorneys' fees and costs, and injunctive and other equitable relief that were asserted or could have been asserted in the Lawsuit.

I have read the notice that was mailed to me and agree to the full terms of the proposed settlement agreement.  I hereby waive my right to object to and/or opt out of the settlement class.


_____          _____
            (signature)                                    (date)

# Exhibit D

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHELLY STIVERS, on behalf of herself and all other similarly situated persons, known and unknown, | |
| Plaintiff, | No. 15-cv-09030 |
| v. | Judge Matthew F. Kennelly |
| | Magistrate Judge Maria Valdez |
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY, | |
| Defendant. | |

## LIST OF OPT-IN PLAINTIFFS

1.      AGEE, CERVANTE L
2.      AHRENS, EDWARD M
3.      ALVAREZ JR, JUAN M
4.      ARROYO, SHANNON M
5.      AUSTIN, STACY D
6.      BERNDT, CLIFF C
7.      BERNHARDT, BARRY E
8.      BERTUCCI, CONSTANCE M
9.      BIESBOER, CHERYL M
10.     BIESEMEYER, JONATHAN D
11.     BONADONA, LORI A
12.     BOYD, ELYCIA S
13.     BRANDON, LORI E
14.     BRAVIERI, SUSAN A
15.     BRIDGEFORTH, VERDENA
16.     BROWN, LYNELL D
17.     BURDINE, CALLIE B
18.     BURK, LEONARD L
19.     BYNUM, BEVERLY C
20.     CAHILL, CAROL A
21.     CHRISTOPHER, DOMINIC G
22.     CLARK, TERRIAN T
23.     COLE, TERRY A
24.     COLLINS, JULIE A
25.     CONTRERAS, SALLY
26.     COOPER, KETRA
27.     CROWDER, KENNETH J

| | |
|---|---|
| 28. | CURRAN, MARY E |
| 29. | CURRIRE, PHILLIP A |
| 30. | DAL CERRO, KATHLEEN M |
| 31. | DENNIS, CURASTINE |
| 32. | DENTAMARO, VINCE N |
| 33. | DIAZ, ARLETTE |
| 34. | DUNLAP, THOMAS |
| 35. | EDWARDS, PAMELA |
| 36. | ELLIS, KAREN A |
| 37. | ERKINS, SPARKLE S |
| 38. | EVERETT, JODIE A |
| 39. | FEDELE, ELIZABETH |
| 40. | FETCHO, GEORGE J |
| 41. | FISCHER, ERIC J |
| 42. | FLORES, YOLANDA |
| 43. | GENTRY, CHRISTINE M |
| 44. | GILFORD, ZAKIYYAH J |
| 45. | GIRARDI, SALLYANNE M |
| 46. | GLADLE, TERINA L |
| 47. | GLUSAK, INEZ Q |
| 48. | GRAYSON, LARRY |
| 49. | HALE, DIANE C |
| 50. | HAWKINS, CAMIRA N |
| 51. | HEARNE, TERRENCE P |
| 52. | HEMMINGS, CATHERINE L |
| 53. | HRISTAKOS, PETER |
| 54. | JACKSON, FRANKIE J |
| 55. | JACKSON, JASMINE N |
| 56. | JACKSON, LEON E |
| 57. | JENTEL, MARK J |
| 58. | JIMENEZ, CARMEN R |
| 59. | JINES, SOPHIA M |
| 60. | JOHNSON, ANGELA M |
| 61. | JOHNSON, DANITA Y |
| 62. | JOSEPH, HAROLD |
| 63. | KLEIDON, EILEEN M |
| 64. | KRISIK, DONALD A |
| 65. | LOCKRIDGE, CLOVIA J |
| 66. | LONGO, DANIEL S |
| 67. | MALONEY, DONNA J |
| 68. | MARKESE, KIM A |
| 69. | MASON, CHRISTOPHER D |
| 70. | MC CHRYSTAL, FRANCES F |
| 71. | MIDIRI, SOFIA |
| 72. | MIKA, GREGORY J |
| 73. | MOJICA, AURA E |

| 74. | MOLARO, LIDA |
|-----|--------------|
| 75. | MONARSKI, MICHAEL A |
| 76. | MOORE, JETANT L |
| 77. | MORALES JR, CELSO |
| 78. | MUSTO, KAREN M |
| 79. | MYSLIWIEC, KELLY K |
| 80. | NICOSIA, CONSTANTINA |
| 81. | O'DELL, KENNETH R |
| 82. | PALAMAR, ROBERT M |
| 83. | PANKOFF JR, HENRY |
| 84. | PAYNE, CAROLYN A |
| 85. | PAYTON, MELANIE L |
| 86. | PELIKAN, JAY |
| 87. | PHILLIPS, CYNTHIA D |
| 88. | PIENKOWSKI, KELLY J |
| 89. | PIENKOWSKI, ROBERT C |
| 90. | PIERCE, CARONE |
| 91. | PORCHE, MARGO E |
| 92. | PRIOLA, VICTOR P |
| 93. | RACHMACIEJ, LUANN |
| 94. | RANALLO - ANNORENO, CYNTHIA L |
| 95. | REEDY, SONYA D |
| 96. | RHODES, TAWANDA L |
| 97. | RIZZO, EDGARDO F |
| 98. | ROBBINS, WINSTON B |
| 99. | ROBINSON, DEAVON D |
| 100. | ROBINSON, LAPORSCHE S |
| 101. | ROBINSON, SHARON |
| 102. | ROGERS JR, CHARLES A |
| 103. | RUBIO-SCHROEDER, AMPARO |
| 104. | RUNYON, JANA L |
| 105. | SANDHU, SATNAM S |
| 106. | SANNER, JOANNE |
| 107. | SARACCO, ANTOINETTE M |
| 108. | SAWYER, ERIC S |
| 109. | SAWYER, MICHELLE |
| 110. | SCHOBINGER, MEGHAN M |
| 111. | SCHROEDER, JACQUELINE |
| 112. | SERIO, DOLORES J |
| 113. | SIERGIEJ, CYNTHIA |
| 114. | SKIBICKI, LOIS A |
| 115. | SMITH, ALBERTA |
| 116. | SMITH, MARCUS D |
| 117. | SMITH, RAYMOND |
| 118. | STEINDLER, WALLACE E |
| 119. | STIVERS, SHELLY P |

| | |
|---|---|
| 120. | TERMAN, MICHAEL P |
| 121. | THOMAS, YOLANDA D |
| 122. | THOMAS-MINZIE, KANIKA |
| 123. | THOMPSON, TONY D |
| 124. | THURSTON, ERNEST D |
| 125. | TOOLEY, JUDITH |
| 126. | TORRADO, SARAH M |
| 127. | TURNER, LOUISE A |
| 128. | URGO, MARGARET |
| 129. | VARGAS, ROSARIO |
| 130. | VASSEL, IRENE L |
| 131. | VILLANUEVA, ABELARDO |
| 132. | WAGNER, CHERYL M |
| 133. | WATSON, LAVERNE |
| 134. | WILSON-LIPSCOMB, YOLANDA |
| 135. | WRENN, DIONNE M |
| 136. | ZIEGLER, BETTE |

# Exhibit E

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SHELLY STIVERS, on behalf of herself and
all other similarly situated persons, known
and unknown,

                Plaintiff,

v.

THE ILLINOIS STATE TOLL HIGHWAY
AUTHORITY,

                Defendant.

**REPORT OF EXPERT CONSULTANT, CONCERNING DAMAGES BY:**

**DANIEL J. LEE**
**5/13/2016**

## I)     Introduction

I, Daniel J. Lee, am reporting calculation for overtime damages in the case of *Stivers v. ISTHA*. This report is being compiled at the request of Plaintiff's attorney, Bradley Manewith, of Siegel & Dolan Ltd.

## II)     Credentials

I hold a Master of Arts in Economics from Georgia State University where I have been pursuing a doctorate of the same field since 2011.  I am scheduled to be completed June 2016.  During this time I have occasionally performed analysis and consulting services to litigating firms. Additionally, I hold a Bachelor's in Math and Economics from Emory University, where I graduated with High Honors.  As means of a biography, an up-to-date Curriculum Vitae is attached in the appendix of this report.

## III)     Methodology and Findings

Damages were calculated using Stata® data analysis software and Microsoft Excel® by Daniel J. Lee.  All relevant formulas and code are attached in the appendix.

Damages in this case are assessed for the 41 month time period October 13, 2012 through March 14, 2016.  During this time, there were (on average) 415.13 toll collectors per week.  This was calculated by counting the number of unique employee ID numbers within each week of timesheet data, and averaging over all weeks[1].  Based solely on the time they have already been paid for, these employees worked, on average 31.57 hours per week.  This was calculated by summing the time paid over each unique employee-week[2]. This number is divided by 3600 to convert from seconds to hours, and then averaged over all weeks[3].

However, as referenced in the complaint, this time paid is based on the assigned shift time, rather than the actual clock-in and clock out times recorded by ISTHA's Kronos system.  Accordingly, we calculate a punch card time in the same fashion using the Kronos variables *endpunchdtm* and *startpunchdtm*.  The resulting difference between the actual punch times and the time paid is on average 15.09 minutes per day[4].  Specifically we calculate that, on average, employees were not paid for 10.52 minutes of pre-shift time, and 4.57 minutes of post-shift time, daily.

Furthermore, the Kronos system records its own time paid variable, *timeinseconds*, which suggests there is even additional time employees were not paid for[5].  The difference between punch times and *timeinseconds* results in a calculation of 15.3 unpaid minutes per day (henceforth *Timeinseconds Rate)*.  For the sake of exposition, we will use the 15.09 figure

---

[1] See Stata® code, lines 19-26.
[2] Time Paid is calculated using the Kronos event variables *startdtm*  and *enddtm*.  Since Stata® reads datetime variables as milliseconds, the time paid formula is (end time-start time)/1000.
[3] See Stata® code, lines 41-50.
[4] See Stata® code, lines 58-64.
[5] The discrepancy between *timeinseconds* and (*enddtm-startdtm*) is unclear but a plausible explanation is round off error when translating from seconds to minutes.

(henceforth *EventRate)* in the remainder of this report's text, however both calculations will be presented in upcoming damages tables.

On average, toll collectors worked 3.97 days per week. This number was calculated by summing all event days over each employee number, within each week in the dataset, and then averaging over this sum[6]. Accordingly, 15.09 unpaid minutes per day amounts to approximately 1 unpaid hour *per week*. Of course, within this set of weekly employees, several fall into the subset of employees working more than 40 hours per week (henceforth "Overtime Employees"). Similar to employees per week, overtime employees are calculated by counting the number of unique employee ID numbers within each week of timesheet data with the additional stipulation that Hours per week exceed 40. On average there are 205.41 overtime employees per week. This set of overtime employees worked (on average) 43.18 hours per week, and 5.2 days per week. Using the *EventRate,* we calculate that overtime employees working 5.2 days per week worked 1.308 unpaid hours per week.

We calculate hourly rates using weighted averages from the Toll Collector Payroll Reports dataset. The average hourly rate is $27.27/hour[7]. We average hourly rates for all time codes that are not some form of sick time or paid time off (that is, all time codes greater than 202 using the Kronos time code variable, *tc*). This average is then weighted by hours worked at those rates. See the appendix for a complete list and description of time codes.

Finally, we calculate damages based on the number of employees, amount of unpaid time, and average wage rates[8]. These damages are calculated for the 41 months of time data for all employees, and also for only overtime employees. The results are presented in turn.

415.13 toll road employees worked 0.2515 unpaid hours per day. Calculated at 3.97 work days per week and $4^{1}/_{3}$ weeks per month ($^{52}/_{12}$) at the average hourly rate, this amounts to $48,941.54 unpaid dollars per month or $2,006,603.22 unpaid dollars over a period of 41 months.

Similarly, overtime damages are calculated for 205.41 overtime employees working 0.2515 unpaid hours per day at 5.2 days per week and $4^{1}/_{3}$ weeks per month. Time-and-a-half on the average hourly wage rate amounts to $40.90. As such unpaid overtime equals $47,638.99 per month or $1,953,198.64 over 41 months.

These calculations are summarized in table 1.

---

[6] See Stata® code, lines 53-55.
[7] See Stata® code, lines 76-79, 87-95.
[8] All calculations from this point forward are done using Microsoft Excel®.

Table 1: Monthly Damage Rates over 41 Months

| Rate | Monthly | Total |
|------|---------|-------|
| All Employees | | |
| *EventRate* | $48,941.54 | $2,006,603.22 |
| *TimeinSecondsRate* | $49,625.65 | $2,034,651.76 |
| OT Employees | | |
| *EventRate* | $47,638.99 | $1,953,198.64 |
| *TimeinSecondsRate* | $48,304.89 | $1,980,500.68 |

Furthermore, Illinois Minimum Wage Law provides for statutory damages equaling 2% of the unpaid wages for each month the wages remain unpaid. Respectively, we calculate 2% of each of the monthly rates described above. They are as follows: $978.83 (All employees, *EventRate*) $992.51 (all employees *TimeinSecondsRate*), $952.78 (OT employees, *EventRate*) and $966.10 (OT employees, *TimeinSecondsRate*).

Table 2: Total Damages (Including 2% Statutory) if Paid at Various Points in Time

| Rate | 2% Monthly | June 22, 2016 | +6 Months | +1 Year | +2 Years |
|------|-----------|---------------|-----------|---------|----------|
| All Employees | | | | | |
| *EventRate* | $978.83 | $2,972,709.26 | $3,219,374.64 | $3,466,040.01 | $3,959,370.75 |
| *TimeinSecondsRate* | $992.51 | $2,986,213.61 | $3,236,326.90 | $3,486,440.19 | $3,986,666.77 |
| OT Employees | | | | | |
| *EventRate* | $952.78 | $2,893,592.33 | $3,133,692.84 | $ 3,373,793.36 | $3,853,994.39 |
| *TimeinSecondsRate* | $966.10 | $2,934,039.30 | $3,177,495.97 | $3,420,952.64 | $3,907,865.98 |

2% monthly damages are calculated through June 22, 2016. They are presented in the June 2016 column of Table 2. Furthermore, failure to pay on time will result in the accrual of additional monthly damages, described and dated in subsequent columns.

## IV)   Conclusion

Small reductions in time paid can have a large and lasting impact on the employees who are entitled to those wages. In the complaint of *Stivers v. ISTHA* the plaintiff respectfully requested back pay for these unpaid amounts as well as statutory damages and any recompense the court deems fair. In this report I have calculated those damages and presented my findings and methodologies in course. In examining these data, I can say with confidence that the toll collectors were not paid by the ISTHA for recorded clock time, that this failure to pay has significant effects at both the individual and aggregate levels, and that the Plaintiff and similar parties should be paid accordingly.

**Report Appendix**

**Contents:**
**Daniel J. Lee, Curriculum Vitae**
**Damage Calculations:**
       **Executive Summary**
       **Stata® Code**
       **All Employee Monthly Damages (EventTime Rate)**
       **Overtime Employee Monthly Damages (EventTime Rate)**
       **All Employee Monthly Damages (TimeinSeconds Rate)**
       **Overtime Employee Monthly Damages (TimeinSeconds Rate)**

# Daniel J. Lee

Department of Economics       ☎ (847) 421-8461
Georgia State University       ✉ dlee55@student.gsu.edu
P.O. Box 3992       https://sites.google.com/site/danlee55
Atlanta, GA 30302-3992       Citizenship: USA

## PROFESSIONAL EXPERIENCE

**Rice University**, Houston, TX
*Jones Graduate School of Business, Postdoctoral Fellow (Imminent)*

## EDUCATION

**Georgia State University**, Atlanta, GA
*Doctor of Philosophy in Economics, expected 2016*
*Master of Arts in Economics, 2013*
**Emory University**, Atlanta, GA
*Bachelor of Arts in Mathematics and Economics with high honors, 2010*

## RESEARCH AND TEACHING INTERESTS

Experimental and Behavioral Economics, Public Economics, Applied Microeconomics

## DISSERTATION

Three Essays on Social Issues in Experimental Economics
Committee: Susan K. Laury (chair), Michael K. Price, Charles Courtemanche, John A. List

## WORKING PAPERS

"Racial Bias and the Validity of the Implicit Association Test" *UNU-WIDER Working Paper 53/2016*

"Will Girls be Girls? Risk Taking and Competition in an All-Girls School"
(with Kurt Schnier and Susan K. Laury)

"Choice of Charitable Gifts"
(with Shachar Kariv, John A. List and Michael K. Price)

"Culture, Compliance, and Confidentiality: A Study of Taxpayer Behavior in the United States and Italy"
(with James Alm, Michele Bernasconi, Susan K. Laury and Sally Wallace)

## OTHER WORKS IN PROGRESS

"Missing Covariates in the Search for Suburbanization"
"Risk Aversion and Implicit Bias"

## TEACHING EXPERIENCE

**Principal Instructor**

| | |
|---|---|
| Introduction to Stata (Research Excellence in Economics Short Course); | February 2015 |
| ECON 3910 Intermediate Microeconomics; | Summer 2014 |
| ECON 2100: The Global Economy; | Fall 2013 |

**Teaching Assistant**

| | |
|---|---|
| ECON 4230: Experimental Economics; | Spring 2015 |
| ECON 2105: Principles of Macroeconomics; | Fall 2014, 2015, Spring 2014 |
| ECON 2106: Principles of Microeconomics; | Fall 2013, Spring 2015, Summer 2013-15 |
| ECON 3900: Macroeconomics (Critical Thinking through Writing); | Spring 2013 |

## OTHER RELEVANT POSITIONS

| | |
|---|---|
| *Becker Friedman Institute, Visiting Scholar* | University of Chicago |
| January 2015 | Chicago, IL |

Daniel J. Lee, Curriculum Vitae

| | |
|---|---|
| *Economics Intern* | Federal Reserve Bank of Atlanta |
| August 2014-Present | Atlanta, GA |
| *Graduate Research Assistant for Dr. Susan K. Laury* | Georgia State University |
| August 2011-Present | Atlanta, GA |
| *Graduate Research Assistant for Dr. J. Todd Swarthout* | Georgia State University |
| August 2012-June 2013 | Atlanta, GA |
| *Education Innovations Laboratory, Research Assistant* | Harvard University |
| Summer 2010 | Cambridge, MA |

## GRANTS, HONORS AND AWARDS

| | |
|---|---|
| UNU-WIDER, Research Grant– "Disadvantaged Groups and Social Mobility" | 2015 |
| Georgia State University, CEAR Scholar | 2011-2016 |
| Georgia State University, CEAR Graduate Travel Grant | 2014, 2015 |
| Acknowledged in *Handbook of the Economics of Risk and Uncertainty*; Eds. Machina and Viscusi | 2014 |

## PROFESSIONAL ACTIVITIES

**Presentations**

| | |
|---|---|
| Southern Economic Association Annual Meeting, New Orleans, LA; | 2015 |
| UNU-WIDER Workshop on Discrimination and Affirmative Action, Helsinki, Finland; | 2015 |
| Economic Science Association North American Meeting, Dallas, TX; | 2015 |
| Georgia State University, Atlanta, GA; (*EMF Brownbag*) | 2015 |
| Rady Spring School in Behavioral Economics, San Diego, CA; (*Poster Presentation*) | 2015 |
| University of Chicago, Chicago, IL; (*Graduate Brownbag*) | 2015 |
| Southeastern International Development Economics Workshop, Atlanta, GA; (*Discussant*) | 2014 |

**Other Relevant Conferences Attended**

| | |
|---|---|
| CEAR/Huebner Summer Risk Institute, Atlanta, GA; | 2015 |
| Southern Economic Association Annual Meeting, Atlanta, GA; | 2014 |
| Rady Spring School in Behavioral Economics, San Diego, CA; | 2014 |

**Refereeing**

Journal of Behavioral and Experimental Economics

## UNIVERSITY SERVICE

Experimental Methods Forum, *Member at Large*

E*x*CEN Recruiter

Graduate Student Association, *Cohort Ambassador*

Research Excellence in Economics (Re$^2$P) Advisor

## PROFESSIONAL AFFILIATIONS

American Economic Association, Southern Economics Association, Economic Science Association

## LANGUAGES AND SOFTWARE

Proficient in Stata, Matlab, R, z-Tree, LaTeX, MSOffice

English (Native), French (Fluent)

## REFERENCES

| | | |
|---|---|---|
| Susan K. Laury (chair) | Michael K. Price | John A. List |
| Department of Economics | Department of Economics | Department of Economics |
| Georgia State University | Georgia State University | University of Chicago |
| ☎ (404) 413-0203 | ☎ (404) 413-0080 | ☎ (773) 702-8176 |
| ✉ slaury@gsu.edu | ✉ mprice25@gsu.edu | ✉ jlist@uchicago.edu |

| | Description | Calculations | | | Weeks per month (52/12) | |
|---|---|---|---|---|---|---|
| 1 | Mean Employees per Week | 415.1281 | | | 4.333 | |
| | 1.a Number of Weeks ( 10/13/12-3/14/16) | | 178 (41 Months) | | | |
| 2 | Mean Employees per Week (40+ Hours) | 205.4096 | | | | |
| 3 | Mean Hours per Week | 31.56993 | | | | |
| | 3.a Mean Days per Week | 3.967659 | | | | |
| | 3.b Mean Hours per Week (40+) | 43.177 | | | | |
| | 3.c Mean Days per Week (40+) | 5.203426 | | | | |
| 4.I | Mean Unpaid Minutes per day (based on *EventTime* ) | 15.089083 | | | | |
| | Hours (Minutes/60) | 0.251484717 | | | | |
| | 4.a pre shift | 10.51657 | | | | |
| | 4.b post shift | 4.572513 | | | | |
| 4.II | Mean Unpaid Minutes per day (based on *TimeinSeconds* ) | 15.3 | | | | |
| | Hours (Minutes/60) | 0.255 | | | | |

| | | | **Time and a half** | | | |
|---|---|---|---|---|---|---|
| 5 | Mean Hourly Rate | $ 27.27 | $ 40.90 | | | |

| | | **Using 4.I (EventTime)** | | **Using 4.II (TimeinSeconds)** | |
|---|---|---|---|---|---|
| 6 | **Average Unpaid Time per month** | | **All Time Total** | | **All Time Total** |
| | #employees per week*(days per week*unpaid hours per day)*(52/12)*rate | $ 48,941.54 | $ 2,006,603.22 | $ 49,625.65 | $ 2,034,651.76 |
| | **2% Average Unpaid Time per month** | $ 978.83 | | $ 992.51 | |
| 7 | **Average Unpaid Time per month @ OT rate** | | **Overtime Total** | | **Overtime Total** |
| | #employees per week (40+)*(unpaid hours per week*days per week)*(52/12)*1.5*rate | $ 47,638.99 | $ 1,953,198.64 | $ 48,304.89 | $ 1,980,500.68 |
| | **2% Average Unpaid OT per month** | $ 952.78 | | $ 966.10 | |
| | **Unpaid Time (2% Damages Calculation)** | | | | |
| 44 months thru June 22, 2016 | | $ 966,106.04 | $ 2,972,709.26 | $ 979,610.39 | $ 2,986,213.61 |
| 50 Months thru Dec 22, 2016 (+6 Months) | | $ 1,212,771.41 | $ 3,219,374.64 | $ 1,229,723.68 | $ 3,236,326.90 |
| 56 Months thru June 22, 2017 (+1 Year) | | $ 1,459,436.78 | $ 3,466,040.01 | $ 1,479,836.97 | $ 3,486,440.19 |
| 68 Months thru June 22, 2018 (+2 Years) | | $ 1,952,767.53 | $ 3,959,370.75 | $ 1,980,063.55 | $ 3,986,666.77 |
| | **Unpaid OT (2% Damages Calculation)** | | | | |
| 44 months thru June 22, 2016 | | $ 940,393.69 | $ 2,893,592.33 | $ 953,538.62 | $ 2,906,737.26 |
| 50 Months thru Dec 22, 2016 (+6 Months) | | $ 1,180,494.20 | $ 3,133,692.84 | $ 1,196,995.29 | $ 3,150,193.93 |
| 56 Months thru June 22, 2017 (+1 Year) | | $ 1,420,594.72 | $ 3,373,793.36 | $ 1,440,451.96 | $ 3,393,650.60 |
| 68 Months thru June 22, 2018 (+2 Years) | | $ 1,900,795.75 | $ 3,853,994.39 | $ 1,927,365.30 | $ 3,880,563.94 |

```stata
 1   *Set Dataset*
 2   clear
 3   use "Kronos Punch Data.dta"
 4   /* HRF and SIF Time Variables*/
 5   gen len=strlen(eventdate)
 6   ** need year, month, day separate
 7   **particularly because can have same day matching to multiple years within dataset
 8   **eg Jan 1, 2013 and Jan 1, 2014
 9   gen year=substr(eventdate,len-3,4)
10   gen month_day=substr(eventdate,1,len-5)
11   **Punch in/out SIF**
12   gen double punchinSIF=clock(startpunchdtm, "MDYhm", 2015)
13   gen double punchoutSIF=clock(endpunchdtm, "MDYhm", 2015)
14   gen double startSIF=clock(startdtm, "MDYhm", 2015)
15   gen double endSIF=clock(enddtm,"MDYhm",2015)
16   **Week #**
17   gen date=date(eventdate,"MDY",2015)
18   gen week=wofd(date)
19   **[1] Average Number of Employees working per week
20   **account for duplicates
21   sort week personnum
22   gen lagid=personnum[_n-1]
23   by week: egen empwk=count(personnum) if personnum!=lagid
24   label var empwk "Employees per week"
25   sum empwk
26   **[1] Average Number of Employees working per week==415.1281
27
28   **[2]Average number of employees working 40+ hours per week
29   **(based solely on the time they have already been paid for,
30   **and not including pre and post shift "off the clock" work)
31   bys week personnum: egen secsperwk=total(timeinseconds)
32   label var secsperwk "Seconds per week (paid)"
33   gen hrsperwk=secsperwk/3600
34   label var hrsperwk "Hours per week (paid)"
35   sort week personnum
36   by week: egen hrswk40=count(personnum) if personnum!=lagid & hrsperwk>=40
37   label var hrswk40 "Employees working 40+ hours per week"
38   sum hrswk40
39   **[2]Average number of employees working 40+ hours per week==205.4096
40
41   **[3] Average number of total hours worked per week for all employees
42   **(based solely on the time they have already been paid for,
43   **and not including  pre and post shift "off the clock" work)
44   gen time= (endSIF-startSIF)/1000
45   bys week personnum: egen timeperwk=total(time)
46   label var timeperwk "Seconds per week"
47   gen timedhrsperwk=secsperwk/3600
48   label var timedhrsperwk "Hours per week"
49   sum timedhrsperwk
50   **[3] Average number of total hours worked per week for all employees == 31.56993
51   sum hrsperwk
52   **[3.1] Average number of total hours worked per week for all employees == 31.5527 (using timeinseconds)
53   bys week personnum: egen daysperwk=count(timeinseconds)
54   label var daysperwk "Days worked per week"
55   sum daysperwk
56   sum daysperwk if hrsperwk>=40
57   **[3.2] Average number of days per week for OT employees==5.20342
58   **[4]Average number of minutes per day of pre and post shift work that was not paid
59   **(i.e., the difference between the actual punch in/punch out times and the start and end of shift times)
60   gen punchtime=(punchoutSIF-punchinSIF)/1000
61   label var punchtime "actual punch in/punch out times"
62   gen unpaidminutes=(punchtime-time)/60
63   sum unpaidminutes
64   **Average number of minutes per day that was not paid ==15.09
65   **[pre-shift]==10.51657
66   gen preshift=(startSIF-punchinSIF)/60000
67   sum preshift
68   **[post-shift]==4.572513
```

```
69   gen postshift=(punchoutSIF-endSIF)/60000
70   sum postshift
71   **using timeinseconds
72   gen minperday_u=(punchtime-timeinseconds)/60
73   label var minperday_u "Unpaid minutes per day"
74   sum minperday_u
75   **Average number of minutes per day that was not paid (timeinseconds)==15.3
76   **[5] Average hourly rate excluding CIC premium
77   **switch datasets
78   clear
79   use "Toll Collector Payroll Reports.dta"
80   destring rate, ignore("$", ",") replace
81   ssc install _gwtmean /* program for calculating weighted averages*/
82   egen avg_rate_noCLC=wtmean(rate) if tc<202 & tc!=4, weight(hours)
83   label var avg_rate_noCLC "average hourly rate excluding CIC premium"
84   sum avg_rate_noCLC
85   **[5] Average hourly rate excluding CIC premium==26.59586
86
87   **[6]Average hourly rate including CIC premium
88   destring amount, ignore("$", ",") replace
89   replace hours=cichrs if tc==4
90   egen total_amt=total(hours*rate) if tc<202
91   egen total_hrs=total(hours) if tc<202 & tc!=4
92   gen avg_rate_wCLC=total_amt/total_hrs
93   label var avg_rate_wCLC "average hourly rate including CIC premium"
94   sum avg_rate_wCLC
95   **[6]Average hourly rate including CIC premium==27.26638
96
```

**Unpaid Time (All Employees)**

| Month | Payment June, 2016 Months to Payment | Damages | Payment December, 2016 Months to Payment | Damages | Payment June, 2017 Months to Payment | Damages | Payment June, 2018 Months to Payment | Damages |
|---|---|---|---|---|---|---|---|---|
| Oct-12 | 44 | $ 43,068.56 | 50 | $ 48,941.54 | 56 | $ 54,814.53 | 68 | $ 66,560.50 |
| Nov-12 | 43 | $ 42,089.73 | 49 | $ 47,962.71 | 55 | $ 53,835.70 | 67 | $ 65,581.67 |
| Dec-12 | 42 | $ 41,110.90 | 48 | $ 46,983.88 | 54 | $ 52,856.87 | 66 | $ 64,602.84 |
| Jan-13 | 41 | $ 40,132.06 | 47 | $ 46,005.05 | 53 | $ 51,878.03 | 65 | $ 63,624.00 |
| Feb-13 | 40 | $ 39,153.23 | 46 | $ 45,026.22 | 52 | $ 50,899.20 | 64 | $ 62,645.17 |
| Mar-13 | 39 | $ 38,174.40 | 45 | $ 44,047.39 | 51 | $ 49,920.37 | 63 | $ 61,666.34 |
| Apr-13 | 38 | $ 37,195.57 | 44 | $ 43,068.56 | 50 | $ 48,941.54 | 62 | $ 60,687.51 |
| May-13 | 37 | $ 36,216.74 | 43 | $ 42,089.73 | 49 | $ 47,962.71 | 61 | $ 59,708.68 |
| Jun-13 | 36 | $ 35,237.91 | 42 | $ 41,110.90 | 48 | $ 46,983.88 | 60 | $ 58,729.85 |
| Jul-13 | 35 | $ 34,259.08 | 41 | $ 40,132.06 | 47 | $ 46,005.05 | 59 | $ 57,751.02 |
| Aug-13 | 34 | $ 33,280.25 | 40 | $ 39,153.23 | 46 | $ 45,026.22 | 58 | $ 56,772.19 |
| Sep-13 | 33 | $ 32,301.42 | 39 | $ 38,174.40 | 45 | $ 44,047.39 | 57 | $ 55,793.36 |
| Oct-13 | 32 | $ 31,322.59 | 38 | $ 37,195.57 | 44 | $ 43,068.56 | 56 | $ 54,814.53 |
| Nov-13 | 31 | $ 30,343.76 | 37 | $ 36,216.74 | 43 | $ 42,089.73 | 55 | $ 53,835.70 |
| Dec-13 | 30 | $ 29,364.93 | 36 | $ 35,237.91 | 42 | $ 41,110.90 | 54 | $ 52,856.87 |
| Jan-14 | 29 | $ 28,386.09 | 35 | $ 34,259.08 | 41 | $ 40,132.06 | 53 | $ 51,878.03 |
| Feb-14 | 28 | $ 27,407.26 | 34 | $ 33,280.25 | 40 | $ 39,153.23 | 52 | $ 50,899.20 |
| Mar-14 | 27 | $ 26,428.43 | 33 | $ 32,301.42 | 39 | $ 38,174.40 | 51 | $ 49,920.37 |
| Apr-14 | 26 | $ 25,449.60 | 32 | $ 31,322.59 | 38 | $ 37,195.57 | 50 | $ 48,941.54 |
| May-14 | 25 | $ 24,470.77 | 31 | $ 30,343.76 | 37 | $ 36,216.74 | 49 | $ 47,962.71 |
| Jun-14 | 24 | $ 23,491.94 | 30 | $ 29,364.93 | 36 | $ 35,237.91 | 48 | $ 46,983.88 |
| Jul-14 | 23 | $ 22,513.11 | 29 | $ 28,386.09 | 35 | $ 34,259.08 | 47 | $ 46,005.05 |
| Aug-14 | 22 | $ 21,534.28 | 28 | $ 27,407.26 | 34 | $ 33,280.25 | 46 | $ 45,026.22 |
| Sep-14 | 21 | $ 20,555.45 | 27 | $ 26,428.43 | 33 | $ 32,301.42 | 45 | $ 44,047.39 |
| Oct-14 | 20 | $ 19,576.62 | 26 | $ 25,449.60 | 32 | $ 31,322.59 | 44 | $ 43,068.56 |
| Nov-14 | 19 | $ 18,597.79 | 25 | $ 24,470.77 | 31 | $ 30,343.76 | 43 | $ 42,089.73 |
| Dec-14 | 18 | $ 17,618.96 | 24 | $ 23,491.94 | 30 | $ 29,364.93 | 42 | $ 41,110.90 |
| Jan-15 | 17 | $ 16,640.12 | 23 | $ 22,513.11 | 29 | $ 28,386.09 | 41 | $ 40,132.06 |
| Feb-15 | 16 | $ 15,661.29 | 22 | $ 21,534.28 | 28 | $ 27,407.26 | 40 | $ 39,153.23 |
| Mar-15 | 15 | $ 14,682.46 | 21 | $ 20,555.45 | 27 | $ 26,428.43 | 39 | $ 38,174.40 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Apr-15** | 14 | $ | 13,703.63 | 20 | $ | 19,576.62 | 26 | $ | 25,449.60 | 38 | $ | 37,195.57 |
| **May-15** | 13 | $ | 12,724.80 | 19 | $ | 18,597.79 | 25 | $ | 24,470.77 | 37 | $ | 36,216.74 |
| **Jun-15** | 12 | $ | 11,745.97 | 18 | $ | 17,618.96 | 24 | $ | 23,491.94 | 36 | $ | 35,237.91 |
| **Jul-15** | 11 | $ | 10,767.14 | 17 | $ | 16,640.12 | 23 | $ | 22,513.11 | 35 | $ | 34,259.08 |
| **Aug-15** | 10 | $ | 9,788.31 | 16 | $ | 15,661.29 | 22 | $ | 21,534.28 | 34 | $ | 33,280.25 |
| **Sep-15** | 9 | $ | 8,809.48 | 15 | $ | 14,682.46 | 21 | $ | 20,555.45 | 33 | $ | 32,301.42 |
| **Oct-15** | 8 | $ | 7,830.65 | 14 | $ | 13,703.63 | 20 | $ | 19,576.62 | 32 | $ | 31,322.59 |
| **Nov-15** | 7 | $ | 6,851.82 | 13 | $ | 12,724.80 | 19 | $ | 18,597.79 | 31 | $ | 30,343.76 |
| **Dec-15** | 6 | $ | 5,872.99 | 12 | $ | 11,745.97 | 18 | $ | 17,618.96 | 30 | $ | 29,364.93 |
| **Jan-16** | 5 | $ | 4,894.15 | 11 | $ | 10,767.14 | 17 | $ | 16,640.12 | 29 | $ | 28,386.09 |
| **Feb-16** | 4 | $ | 3,915.32 | 10 | $ | 9,788.31 | 16 | $ | 15,661.29 | 28 | $ | 27,407.26 |
| **Mar-16** | 3 | $ | 2,936.49 | 9 | $ | 8,809.48 | 15 | $ | 14,682.46 | 27 | $ | 26,428.43 |
| | | | | | | | | | | |
| **Damages** | | $ | 966,106.04 | | $ | 1,212,771.41 | | $ | 1,459,436.78 | | $ | 1,952,767.53 |
| **Unpaid** | | $ | 2,528,699.20 | | $ | 2,528,699.20 | | $ | 2,528,699.20 | | $ | 2,528,699.20 |
| **Total** | | $ | 3,494,805.24 | | $ | 3,741,470.61 | | $ | 3,988,135.98 | | $ | 4,481,466.72 |

**Unpaid Time (OT Employees)**

| Month | Payment June, 2016 Months to Payment | Damages | Payment December, 2016 Months to Payment | Damages | Payment June, 2017 Months to Payment | Damages | Payment June, 2018 Months to Payment | Damages |
|---|---|---|---|---|---|---|---|---|
| Oct-12 | 44 | $ 41,922.31 | 50 | $ 47,638.99 | 56 | $ 53,355.67 | 68 | $ 64,789.03 |
| Nov-12 | 43 | $ 40,969.53 | 49 | $ 46,686.21 | 55 | $ 52,402.89 | 67 | $ 63,836.25 |
| Dec-12 | 42 | $ 40,016.75 | 48 | $ 45,733.43 | 54 | $ 51,450.11 | 66 | $ 62,883.47 |
| Jan-13 | 41 | $ 39,063.97 | 47 | $ 44,780.65 | 53 | $ 50,497.33 | 65 | $ 61,930.69 |
| Feb-13 | 40 | $ 38,111.19 | 46 | $ 43,827.87 | 52 | $ 49,544.55 | 64 | $ 60,977.91 |
| Mar-13 | 39 | $ 37,158.41 | 45 | $ 42,875.09 | 51 | $ 48,591.77 | 63 | $ 60,025.13 |
| Apr-13 | 38 | $ 36,205.63 | 44 | $ 41,922.31 | 50 | $ 47,638.99 | 62 | $ 59,072.35 |
| May-13 | 37 | $ 35,252.85 | 43 | $ 40,969.53 | 49 | $ 46,686.21 | 61 | $ 58,119.57 |
| Jun-13 | 36 | $ 34,300.07 | 42 | $ 40,016.75 | 48 | $ 45,733.43 | 60 | $ 57,166.79 |
| Jul-13 | 35 | $ 33,347.29 | 41 | $ 39,063.97 | 47 | $ 44,780.65 | 59 | $ 56,214.01 |
| Aug-13 | 34 | $ 32,394.51 | 40 | $ 38,111.19 | 46 | $ 43,827.87 | 58 | $ 55,261.23 |
| Sep-13 | 33 | $ 31,441.73 | 39 | $ 37,158.41 | 45 | $ 42,875.09 | 57 | $ 54,308.45 |
| Oct-13 | 32 | $ 30,488.95 | 38 | $ 36,205.63 | 44 | $ 41,922.31 | 56 | $ 53,355.67 |
| Nov-13 | 31 | $ 29,536.17 | 37 | $ 35,252.85 | 43 | $ 40,969.53 | 55 | $ 52,402.89 |
| Dec-13 | 30 | $ 28,583.39 | 36 | $ 34,300.07 | 42 | $ 40,016.75 | 54 | $ 51,450.11 |
| Jan-14 | 29 | $ 27,630.61 | 35 | $ 33,347.29 | 41 | $ 39,063.97 | 53 | $ 50,497.33 |
| Feb-14 | 28 | $ 26,677.84 | 34 | $ 32,394.51 | 40 | $ 38,111.19 | 52 | $ 49,544.55 |
| Mar-14 | 27 | $ 25,725.06 | 33 | $ 31,441.73 | 39 | $ 37,158.41 | 51 | $ 48,591.77 |
| Apr-14 | 26 | $ 24,772.28 | 32 | $ 30,488.95 | 38 | $ 36,205.63 | 50 | $ 47,638.99 |
| May-14 | 25 | $ 23,819.50 | 31 | $ 29,536.17 | 37 | $ 35,252.85 | 49 | $ 46,686.21 |
| Jun-14 | 24 | $ 22,866.72 | 30 | $ 28,583.39 | 36 | $ 34,300.07 | 48 | $ 45,733.43 |
| Jul-14 | 23 | $ 21,913.94 | 29 | $ 27,630.61 | 35 | $ 33,347.29 | 47 | $ 44,780.65 |
| Aug-14 | 22 | $ 20,961.16 | 28 | $ 26,677.84 | 34 | $ 32,394.51 | 46 | $ 43,827.87 |
| Sep-14 | 21 | $ 20,008.38 | 27 | $ 25,725.06 | 33 | $ 31,441.73 | 45 | $ 42,875.09 |
| Oct-14 | 20 | $ 19,055.60 | 26 | $ 24,772.28 | 32 | $ 30,488.95 | 44 | $ 41,922.31 |
| Nov-14 | 19 | $ 18,102.82 | 25 | $ 23,819.50 | 31 | $ 29,536.17 | 43 | $ 40,969.53 |
| Dec-14 | 18 | $ 17,150.04 | 24 | $ 22,866.72 | 30 | $ 28,583.39 | 42 | $ 40,016.75 |
| Jan-15 | 17 | $ 16,197.26 | 23 | $ 21,913.94 | 29 | $ 27,630.61 | 41 | $ 39,063.97 |
| Feb-15 | 16 | $ 15,244.48 | 22 | $ 20,961.16 | 28 | $ 26,677.84 | 40 | $ 38,111.19 |
| Mar-15 | 15 | $ 14,291.70 | 21 | $ 20,008.38 | 27 | $ 25,725.06 | 39 | $ 37,158.41 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Apr-15** | 14 | $ 13,338.92 | 20 | $ 19,055.60 | 26 | $ 24,772.28 | 38 | $ 36,205.63 |
| **May-15** | 13 | $ 12,386.14 | 19 | $ 18,102.82 | 25 | $ 23,819.50 | 37 | $ 35,252.85 |
| **Jun-15** | 12 | $ 11,433.36 | 18 | $ 17,150.04 | 24 | $ 22,866.72 | 36 | $ 34,300.07 |
| **Jul-15** | 11 | $ 10,480.58 | 17 | $ 16,197.26 | 23 | $ 21,913.94 | 35 | $ 33,347.29 |
| **Aug-15** | 10 | $ 9,527.80 | 16 | $ 15,244.48 | 22 | $ 20,961.16 | 34 | $ 32,394.51 |
| **Sep-15** | 9 | $ 8,575.02 | 15 | $ 14,291.70 | 21 | $ 20,008.38 | 33 | $ 31,441.73 |
| **Oct-15** | 8 | $ 7,622.24 | 14 | $ 13,338.92 | 20 | $ 19,055.60 | 32 | $ 30,488.95 |
| **Nov-15** | 7 | $ 6,669.46 | 13 | $ 12,386.14 | 19 | $ 18,102.82 | 31 | $ 29,536.17 |
| **Dec-15** | 6 | $ 5,716.68 | 12 | $ 11,433.36 | 18 | $ 17,150.04 | 30 | $ 28,583.39 |
| **Jan-16** | 5 | $ 4,763.90 | 11 | $ 10,480.58 | 17 | $ 16,197.26 | 29 | $ 27,630.61 |
| **Feb-16** | 4 | $ 3,811.12 | 10 | $ 9,527.80 | 16 | $ 15,244.48 | 28 | $ 26,677.84 |
| **Mar-16** | 3 | $ 2,858.34 | 9 | $ 8,575.02 | 15 | $ 14,291.70 | 27 | $ 25,725.06 |
| | | | | | | | | |
| **Damages** | | $ 940,393.69 | | $ 1,180,494.20 | | $ 1,420,594.72 | | $ 1,900,795.75 |
| **Unpaid** | | $ 1,953,198.64 | | $ 1,953,198.64 | | $ 1,953,198.64 | | $ 1,953,198.64 |
| **Total** | | $ 2,893,592.33 | | $ 3,133,692.84 | | $ 3,373,793.36 | | $ 3,853,994.39 |

**Unpaid Time (All Employees)**

| Month | Payment June, 2016 Months to Payment | Damages | Payment December, 2016 Months to Payment | Damages | Payment June, 2017 Months to Payment | Damages | Payment June, 2018 Months to Payment | Damages |
|---|---|---|---|---|---|---|---|---|
| Oct-12 | 44 | $ 43,670.57 | 50 | $ 49,625.65 | 56 | $ 55,580.73 | 68 | $ 67,490.89 |
| Nov-12 | 43 | $ 42,678.06 | 49 | $ 48,633.14 | 55 | $ 54,588.22 | 67 | $ 66,498.37 |
| Dec-12 | 42 | $ 41,685.55 | 48 | $ 47,640.63 | 54 | $ 53,595.70 | 66 | $ 65,505.86 |
| Jan-13 | 41 | $ 40,693.04 | 47 | $ 46,648.11 | 53 | $ 52,603.19 | 65 | $ 64,513.35 |
| Feb-13 | 40 | $ 39,700.52 | 46 | $ 45,655.60 | 52 | $ 51,610.68 | 64 | $ 63,520.84 |
| Mar-13 | 39 | $ 38,708.01 | 45 | $ 44,663.09 | 51 | $ 50,618.17 | 63 | $ 62,528.32 |
| Apr-13 | 38 | $ 37,715.50 | 44 | $ 43,670.57 | 50 | $ 49,625.65 | 62 | $ 61,535.81 |
| May-13 | 37 | $ 36,722.98 | 43 | $ 42,678.06 | 49 | $ 48,633.14 | 61 | $ 60,543.30 |
| Jun-13 | 36 | $ 35,730.47 | 42 | $ 41,685.55 | 48 | $ 47,640.63 | 60 | $ 59,550.78 |
| Jul-13 | 35 | $ 34,737.96 | 41 | $ 40,693.04 | 47 | $ 46,648.11 | 59 | $ 58,558.27 |
| Aug-13 | 34 | $ 33,745.44 | 40 | $ 39,700.52 | 46 | $ 45,655.60 | 58 | $ 57,565.76 |
| Sep-13 | 33 | $ 32,752.93 | 39 | $ 38,708.01 | 45 | $ 44,663.09 | 57 | $ 56,573.24 |
| Oct-13 | 32 | $ 31,760.42 | 38 | $ 37,715.50 | 44 | $ 43,670.57 | 56 | $ 55,580.73 |
| Nov-13 | 31 | $ 30,767.90 | 37 | $ 36,722.98 | 43 | $ 42,678.06 | 55 | $ 54,588.22 |
| Dec-13 | 30 | $ 29,775.39 | 36 | $ 35,730.47 | 42 | $ 41,685.55 | 54 | $ 53,595.70 |
| Jan-14 | 29 | $ 28,782.88 | 35 | $ 34,737.96 | 41 | $ 40,693.04 | 53 | $ 52,603.19 |
| Feb-14 | 28 | $ 27,790.37 | 34 | $ 33,745.44 | 40 | $ 39,700.52 | 52 | $ 51,610.68 |
| Mar-14 | 27 | $ 26,797.85 | 33 | $ 32,752.93 | 39 | $ 38,708.01 | 51 | $ 50,618.17 |
| Apr-14 | 26 | $ 25,805.34 | 32 | $ 31,760.42 | 38 | $ 37,715.50 | 50 | $ 49,625.65 |
| May-14 | 25 | $ 24,812.83 | 31 | $ 30,767.90 | 37 | $ 36,722.98 | 49 | $ 48,633.14 |
| Jun-14 | 24 | $ 23,820.31 | 30 | $ 29,775.39 | 36 | $ 35,730.47 | 48 | $ 47,640.63 |
| Jul-14 | 23 | $ 22,827.80 | 29 | $ 28,782.88 | 35 | $ 34,737.96 | 47 | $ 46,648.11 |
| Aug-14 | 22 | $ 21,835.29 | 28 | $ 27,790.37 | 34 | $ 33,745.44 | 46 | $ 45,655.60 |
| Sep-14 | 21 | $ 20,842.77 | 27 | $ 26,797.85 | 33 | $ 32,752.93 | 45 | $ 44,663.09 |
| Oct-14 | 20 | $ 19,850.26 | 26 | $ 25,805.34 | 32 | $ 31,760.42 | 44 | $ 43,670.57 |
| Nov-14 | 19 | $ 18,857.75 | 25 | $ 24,812.83 | 31 | $ 30,767.90 | 43 | $ 42,678.06 |
| Dec-14 | 18 | $ 17,865.23 | 24 | $ 23,820.31 | 30 | $ 29,775.39 | 42 | $ 41,685.55 |
| Jan-15 | 17 | $ 16,872.72 | 23 | $ 22,827.80 | 29 | $ 28,782.88 | 41 | $ 40,693.04 |
| Feb-15 | 16 | $ 15,880.21 | 22 | $ 21,835.29 | 28 | $ 27,790.37 | 40 | $ 39,700.52 |
| Mar-15 | 15 | $ 14,887.70 | 21 | $ 20,842.77 | 27 | $ 26,797.85 | 39 | $ 38,708.01 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Apr-15 | 14 | $ | 13,895.18 | 20 | $ | 19,850.26 | 26 | $ | 25,805.34 | 38 | $ | 37,715.50 |
| May-15 | 13 | $ | 12,902.67 | 19 | $ | 18,857.75 | 25 | $ | 24,812.83 | 37 | $ | 36,722.98 |
| Jun-15 | 12 | $ | 11,910.16 | 18 | $ | 17,865.23 | 24 | $ | 23,820.31 | 36 | $ | 35,730.47 |
| Jul-15 | 11 | $ | 10,917.64 | 17 | $ | 16,872.72 | 23 | $ | 22,827.80 | 35 | $ | 34,737.96 |
| Aug-15 | 10 | $ | 9,925.13 | 16 | $ | 15,880.21 | 22 | $ | 21,835.29 | 34 | $ | 33,745.44 |
| Sep-15 | 9 | $ | 8,932.62 | 15 | $ | 14,887.70 | 21 | $ | 20,842.77 | 33 | $ | 32,752.93 |
| Oct-15 | 8 | $ | 7,940.10 | 14 | $ | 13,895.18 | 20 | $ | 19,850.26 | 32 | $ | 31,760.42 |
| Nov-15 | 7 | $ | 6,947.59 | 13 | $ | 12,902.67 | 19 | $ | 18,857.75 | 31 | $ | 30,767.90 |
| Dec-15 | 6 | $ | 5,955.08 | 12 | $ | 11,910.16 | 18 | $ | 17,865.23 | 30 | $ | 29,775.39 |
| Jan-16 | 5 | $ | 4,962.57 | 11 | $ | 10,917.64 | 17 | $ | 16,872.72 | 29 | $ | 28,782.88 |
| Feb-16 | 4 | $ | 3,970.05 | 10 | $ | 9,925.13 | 16 | $ | 15,880.21 | 28 | $ | 27,790.37 |
| Mar-16 | 3 | $ | 2,977.54 | 9 | $ | 8,932.62 | 15 | $ | 14,887.70 | 27 | $ | 26,797.85 |
| | | | | | | | | | | |
| **Damages** | | $ | **979,610.39** | | $ | **1,229,723.68** | | $ | **1,479,836.97** | | $ | **1,980,063.55** |
| **Unpaid** | | $ | **2,564,045.65** | | $ | **2,564,045.65** | | $ | **2,564,045.65** | | $ | **2,564,045.65** |
| **Total** | | $ | **3,543,656.04** | | $ | **3,793,769.33** | | $ | **4,043,882.62** | | $ | **4,544,109.20** |

**Unpaid Time (OT Employees)**

| Month | Payment June, 2016 Months to Payment | Damages | Payment December, 2016 Months to Payment | Damages | Payment June, 2017 Months to Payment | Damages | Payment June, 2018 Months to Payment | Damages |
|---|---|---|---|---|---|---|---|---|
| Oct-12 | 44 | $ 42,508.31 | 50 | $ 48,304.89 | 56 | $ 54,101.48 | 68 | $ 65,694.66 |
| Nov-12 | 43 | $ 41,542.21 | 49 | $ 47,338.80 | 55 | $ 53,135.38 | 67 | $ 64,728.56 |
| Dec-12 | 42 | $ 40,576.11 | 48 | $ 46,372.70 | 54 | $ 52,169.29 | 66 | $ 63,762.46 |
| Jan-13 | 41 | $ 39,610.01 | 47 | $ 45,406.60 | 53 | $ 51,203.19 | 65 | $ 62,796.36 |
| Feb-13 | 40 | $ 38,643.92 | 46 | $ 44,440.50 | 52 | $ 50,237.09 | 64 | $ 61,830.27 |
| Mar-13 | 39 | $ 37,677.82 | 45 | $ 43,474.41 | 51 | $ 49,270.99 | 63 | $ 60,864.17 |
| Apr-13 | 38 | $ 36,711.72 | 44 | $ 42,508.31 | 50 | $ 48,304.89 | 62 | $ 59,898.07 |
| May-13 | 37 | $ 35,745.62 | 43 | $ 41,542.21 | 49 | $ 47,338.80 | 61 | $ 58,931.97 |
| Jun-13 | 36 | $ 34,779.52 | 42 | $ 40,576.11 | 48 | $ 46,372.70 | 60 | $ 57,965.87 |
| Jul-13 | 35 | $ 33,813.43 | 41 | $ 39,610.01 | 47 | $ 45,406.60 | 59 | $ 56,999.78 |
| Aug-13 | 34 | $ 32,847.33 | 40 | $ 38,643.92 | 46 | $ 44,440.50 | 58 | $ 56,033.68 |
| Sep-13 | 33 | $ 31,881.23 | 39 | $ 37,677.82 | 45 | $ 43,474.41 | 57 | $ 55,067.58 |
| Oct-13 | 32 | $ 30,915.13 | 38 | $ 36,711.72 | 44 | $ 42,508.31 | 56 | $ 54,101.48 |
| Nov-13 | 31 | $ 29,949.03 | 37 | $ 35,745.62 | 43 | $ 41,542.21 | 55 | $ 53,135.38 |
| Dec-13 | 30 | $ 28,982.94 | 36 | $ 34,779.52 | 42 | $ 40,576.11 | 54 | $ 52,169.29 |
| Jan-14 | 29 | $ 28,016.84 | 35 | $ 33,813.43 | 41 | $ 39,610.01 | 53 | $ 51,203.19 |
| Feb-14 | 28 | $ 27,050.74 | 34 | $ 32,847.33 | 40 | $ 38,643.92 | 52 | $ 50,237.09 |
| Mar-14 | 27 | $ 26,084.64 | 33 | $ 31,881.23 | 39 | $ 37,677.82 | 51 | $ 49,270.99 |
| Apr-14 | 26 | $ 25,118.55 | 32 | $ 30,915.13 | 38 | $ 36,711.72 | 50 | $ 48,304.89 |
| May-14 | 25 | $ 24,152.45 | 31 | $ 29,949.03 | 37 | $ 35,745.62 | 49 | $ 47,338.80 |
| Jun-14 | 24 | $ 23,186.35 | 30 | $ 28,982.94 | 36 | $ 34,779.52 | 48 | $ 46,372.70 |
| Jul-14 | 23 | $ 22,220.25 | 29 | $ 28,016.84 | 35 | $ 33,813.43 | 47 | $ 45,406.60 |
| Aug-14 | 22 | $ 21,254.15 | 28 | $ 27,050.74 | 34 | $ 32,847.33 | 46 | $ 44,440.50 |
| Sep-14 | 21 | $ 20,288.06 | 27 | $ 26,084.64 | 33 | $ 31,881.23 | 45 | $ 43,474.41 |
| Oct-14 | 20 | $ 19,321.96 | 26 | $ 25,118.55 | 32 | $ 30,915.13 | 44 | $ 42,508.31 |
| Nov-14 | 19 | $ 18,355.86 | 25 | $ 24,152.45 | 31 | $ 29,949.03 | 43 | $ 41,542.21 |
| Dec-14 | 18 | $ 17,389.76 | 24 | $ 23,186.35 | 30 | $ 28,982.94 | 42 | $ 40,576.11 |
| Jan-15 | 17 | $ 16,423.66 | 23 | $ 22,220.25 | 29 | $ 28,016.84 | 41 | $ 39,610.01 |
| Feb-15 | 16 | $ 15,457.57 | 22 | $ 21,254.15 | 28 | $ 27,050.74 | 40 | $ 38,643.92 |
| Mar-15 | 15 | $ 14,491.47 | 21 | $ 20,288.06 | 27 | $ 26,084.64 | 39 | $ 37,677.82 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Apr-15** | 14 | $ | 13,525.37 | 20 | $ | 19,321.96 | 26 | $ | 25,118.55 | 38 | $ | 36,711.72 |
| **May-15** | 13 | $ | 12,559.27 | 19 | $ | 18,355.86 | 25 | $ | 24,152.45 | 37 | $ | 35,745.62 |
| **Jun-15** | 12 | $ | 11,593.17 | 18 | $ | 17,389.76 | 24 | $ | 23,186.35 | 36 | $ | 34,779.52 |
| **Jul-15** | 11 | $ | 10,627.08 | 17 | $ | 16,423.66 | 23 | $ | 22,220.25 | 35 | $ | 33,813.43 |
| **Aug-15** | 10 | $ | 9,660.98 | 16 | $ | 15,457.57 | 22 | $ | 21,254.15 | 34 | $ | 32,847.33 |
| **Sep-15** | 9 | $ | 8,694.88 | 15 | $ | 14,491.47 | 21 | $ | 20,288.06 | 33 | $ | 31,881.23 |
| **Oct-15** | 8 | $ | 7,728.78 | 14 | $ | 13,525.37 | 20 | $ | 19,321.96 | 32 | $ | 30,915.13 |
| **Nov-15** | 7 | $ | 6,762.69 | 13 | $ | 12,559.27 | 19 | $ | 18,355.86 | 31 | $ | 29,949.03 |
| **Dec-15** | 6 | $ | 5,796.59 | 12 | $ | 11,593.17 | 18 | $ | 17,389.76 | 30 | $ | 28,982.94 |
| **Jan-16** | 5 | $ | 4,830.49 | 11 | $ | 10,627.08 | 17 | $ | 16,423.66 | 29 | $ | 28,016.84 |
| **Feb-16** | 4 | $ | 3,864.39 | 10 | $ | 9,660.98 | 16 | $ | 15,457.57 | 28 | $ | 27,050.74 |
| **Mar-16** | 3 | $ | 2,898.29 | 9 | $ | 8,694.88 | 15 | $ | 14,491.47 | 27 | $ | 26,084.64 |
| | | | | | | | | | | | | |
| **Damages** | | $ | 953,538.62 | | $ | 1,196,995.29 | | $ | 1,440,451.96 | | $ | 1,927,365.30 |
| **Unpaid** | | $ | 1,980,500.68 | | $ | 1,980,500.68 | | $ | 1,980,500.68 | | $ | 1,980,500.68 |
| **Total** | | $ | 2,934,039.30 | | $ | 3,177,495.97 | | $ | 3,420,952.64 | | $ | 3,907,865.98 |

# Exhibit F

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHELLY STIVERS, on behalf of herself and
all other similarly situated persons, known
and unknown,

                Plaintiff,

v.

ILLINOIS STATE TOLL HIGHWAY
AUTHORITY,

                Defendant.

No. 15-cv-09030

Judge Matthew F. Kennelly
Magistrate Judge Maria Valdez

## DECLARATION OF SHELLY STIVERS

Pursuant to 28 U.S.C. § 1746, I, Shelly Stivers, declare under penalty of perjury that the following statements are true and correct:

1.      My name is Shelly Stivers and I am over twenty-one (21) years of age. This declaration is limited to the matters contained herein.

2.      I worked as a toll collector for the Illinois State Toll Highway Authority ("ISTHA" or "Tollway") from approximately June 2013 until on or about August 30, 2015.

3.      During my employment with ISTHA I worked at multiple toll plazas. Specifically, I had experience working at the Belvidere, Dixon, and DeKalb toll plazas.

4.      My weekly hours fluctuated during my employment with the Tollway. Typically, I was scheduled to work five (5) days per week and anywhere between thirty-two (32) and forty (40) hours per week. However, I also needed to be available to work on one of my scheduled off days if needed. More often than not, I was called in to work on my scheduled off day. As a result, I regularly worked over forty (40) hours per week.

5.      Throughout my employment, ISTHA required me and my co-workers to be in our assigned toll booth by the time our shifts started.

6.      Before going to my assigned toll booth, I was required to punch in, pick up my bank, tray, and money bags from the toll plaza's office, count my bank to confirm I received the proper amount, and organize my tray. I also had to get copies of the forms I would need to complete during the day.

7.      It usually took me approximately ten (10) minutes to fifteen (15) minutes to complete these pre-shift tasks and then to walk to my assigned toll booth. The Tollway did not pay me for this work.

8.      At the end of my shift, after walking back from my assigned toll booth to the toll plaza office ISTHA required me to complete my daily paperwork, organize my money, put the organized money and my completed paperwork into the money bags, wait to have all of my money bags scanned into the system, return the scanned bags to the plaza safe, and clock out.

9.      It usually took me approximately five (5) to ten (10) minutes to complete these post-shift tasks, including walking from my assigned toll booth. ISTHA did not pay me for this work.

10.     In total, the Tollway failed to pay me for between approximately fifteen (15) and twenty-five (25) minutes per day of work it required me to perform in order to do my job as a toll collector.

Further Declarant Sayeth Not,          _Shelly Stivers_____
                                        Shelly Stivers
                                        _6 - 3 - 16_____
                                        Date

2

# Exhibit G

April 2016

The Illinois State Toll Highway Authority

| Start of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Retrieve Cash Drawer | 5 | 0.139 | 0.141 | 0.018 | 0.119 | 0.164 | 0.121 | 0.123 | 0.128 | 0.139 | 0.153 | 0.160 | 0.162 |
| Wait to Pre Shift Paperwork | 11 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Pre Shift Paperwork | 11 | 0.906 | 2.143 | 2.412 | 0.000 | 7.809 | 0.150 | 0.301 | 0.591 | 0.906 | 2.913 | 4.882 | 6.345 |
| Wait To Get Money | 12 | 0.000 | 0.004 | 0.014 | 0.000 | 0.048 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.022 |
| Get and Count Money | 12 | 1.414 | 1.743 | 1.193 | 0.042 | 3.782 | 0.261 | 0.453 | 0.942 | 1.414 | 2.704 | 3.171 | 3.467 |
| Wait to Review Document(s) | 4 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 4 | 0.583 | 0.686 | 0.770 | 0.000 | 1.579 | 0.013 | 0.026 | 0.066 | 0.583 | 1.203 | 1.428 | 1.504 |
| Prep To Depart | 11 | 0.079 | 0.103 | 0.098 | 0.000 | 0.293 | 0.000 | 0.000 | 0.030 | 0.079 | 0.173 | 0.212 | 0.252 |
| Wait to Swipe In | 9 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Swipe In | 9 | 0.131 | 0.159 | 0.097 | 0.073 | 0.390 | 0.077 | 0.080 | 0.092 | 0.131 | 0.184 | 0.231 | 0.311 |
| Start of Shift Walk* | | 0.767 | | | 0.658 | 0.877 | | | | | | | |
| Total Start of Shift | | 4.019 | 4.979 | 4.602 | 0.893 | 14.941 | 0.622 | 0.983 | 1.849 | 3.252 | 7.329 | 10.084 | 12.062 |

| End of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wait to Review Document(s) | 3 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 3 | 0.535 | 0.596 | 0.279 | 0.354 | 0.901 | 0.372 | 0.390 | 0.444 | 0.535 | 0.718 | 0.828 | 0.864 |
| Wait to Post Shift Paperwork | 12 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Post Shift Paperwork | 12 | 1.178 | 2.112 | 3.204 | 0.040 | 11.851 | 0.106 | 0.195 | 0.581 | 1.178 | 2.049 | 2.979 | 6.989 |
| Count Cash Drawer | 10 | 1.547 | 1.393 | 1.044 | 0.000 | 2.906 | 0.000 | 0.000 | 0.528 | 1.547 | 2.083 | 2.640 | 2.773 |
| Wait To Drop Deposit | 11 | 0.000 | 0.060 | 0.200 | 0.000 | 0.663 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.331 |
| Drop Deposit | 11 | 0.468 | 0.477 | 0.278 | 0.216 | 1.195 | 0.224 | 0.232 | 0.279 | 0.468 | 0.510 | 0.675 | 0.935 |
| Replace Cash Drawer | 11 | 0.199 | 0.222 | 0.108 | 0.116 | 0.471 | 0.117 | 0.119 | 0.152 | 0.199 | 0.225 | 0.369 | 0.420 |
| Wait to Swipe Out | 12 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Swipe Out | 9 | 0.121 | 0.184 | 0.130 | 0.069 | 0.434 | 0.074 | 0.078 | 0.104 | 0.121 | 0.280 | 0.352 | 0.393 |
| End of Shift Walk* | | 0.000 | | | 0.000 | 0.000 | | | | | | | |
| Total End of Shift | | 4.049 | 5.045 | 5.244 | 0.795 | 18.421 | 0.893 | 1.014 | 2.088 | 4.049 | 5.865 | 7.843 | 12.706 |
| Total Start and End of Shift | | 8.068 | 10.024 | 9.846 | 1.688 | 33.362 | 1.515 | 1.997 | 3.937 | 7.300 | 13.194 | 17.926 | 24.769 |

* Average Walk Times

CONFIDENTIAL AND PRIVILEGED

THIS IS A PRELIMINARY DRAFT. IT HAS BEEN PREPARED BASED ON PRELIMINARY INFORMATION AND ASSUMPTIONS. NO ONE MAY RELY ON THIS DRAFT. IT IS SUBJECT TO CHANGE AS ADDITIONAL INFORMATION BECOMES AVAILABLE OR IS CLARIFIED

The Illinois State Toll Highway Authority

| Start of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Retrieve Cash Drawer | 3 | 0.414 | 0.361 | 0.147 | 0.195 | 0.474 | 0.217 | 0.239 | 0.305 | 0.414 | 0.444 | 0.462 | 0.468 |
| Wait to Pre Shift Paperwork | 6 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Pre Shift Paperwork | 6 | 1.407 | 1.686 | 1.083 | 0.280 | 3.202 | 0.492 | 0.704 | 1.140 | 1.407 | 2.430 | 2.948 | 3.075 |
| Wait To Get Money | 8 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Get and Count Money | 8 | 1.437 | 1.618 | 1.189 | 0.378 | 3.391 | 0.437 | 0.495 | 0.569 | 1.437 | 2.338 | 3.178 | 3.284 |
| Wait to Review Document(s) | 0 | 0.000 | 0.000 | - | - | - | - | - | - | - | - | - | - |
| Review Document(s) | 0 | 0.000 | 0.000 | - | - | - | - | - | - | - | - | - | - |
| Prep To Depart | 10 | 0.158 | 0.207 | 0.159 | 0.049 | 0.583 | 0.076 | 0.103 | 0.120 | 0.158 | 0.202 | 0.406 | 0.494 |
| Wait to Swipe In | 10 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Swipe In | 10 | 0.147 | 0.246 | 0.246 | 0.087 | 0.887 | 0.090 | 0.092 | 0.100 | 0.147 | 0.300 | 0.415 | 0.651 |
| Start of Shift Walk* | | 0.772 | | | 0.662 | 0.882 | | | | | | | |
| Total Start of Shift | | 4.337 | 4.118 | 2.824 | 1.650 | 9.419 | 1.311 | 1.633 | 2.234 | 3.565 | 5.715 | 7.408 | 7.973 |

| End of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wait to Review Document(s) | 6 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 6 | 0.732 | 1.134 | 1.146 | 0.000 | 3.035 | 0.084 | 0.167 | 0.424 | 0.732 | 1.670 | 2.503 | 2.769 |
| Wait to Post Shift Paperwork | 13 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Post Shift Paperwork | 13 | 0.315 | 0.514 | 0.622 | 0.000 | 1.834 | 0.000 | 0.000 | 0.000 | 0.315 | 0.957 | 1.367 | 1.602 |
| Count Cash Drawer | 13 | 0.000 | 0.335 | 0.691 | 0.000 | 2.393 | 0.000 | 0.000 | 0.000 | 0.000 | 0.321 | 0.946 | 1.608 |
| Wait To Drop Deposit | 14 | 0.000 | 0.000 | - | - | - | - | - | - | - | - | - | - |
| Drop Deposit | 14 | 0.161 | 0.176 | 0.193 | 0.000 | 0.607 | 0.000 | 0.000 | 0.000 | 0.161 | 0.277 | 0.377 | 0.471 |
| Replace Cash Drawer | 10 | 0.161 | 0.274 | 0.412 | 0.000 | 1.361 | 0.000 | 0.000 | 0.000 | 0.161 | 0.342 | 0.475 | 0.918 |
| Wait to Swipe Out | 14 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Swipe Out | 14 | 0.138 | 0.135 | 0.075 | 0.000 | 0.233 | 0.019 | 0.039 | 0.092 | 0.138 | 0.187 | 0.231 | 0.233 |
| End of Shift Walk* | | 0.000 | | | 0.000 | 0.000 | | | | | | | |
| Total End of Shift | | 1.508 | 2.568 | 3.138 | 0.000 | 9.462 | 0.102 | 0.206 | 0.517 | 1.508 | 3.754 | 5.899 | 7.601 |
| Total Start and End of Shift | | 5.844 | 6.686 | 5.962 | 1.650 | 18.881 | 1.413 | 1.840 | 2.751 | 5.072 | 9.470 | 13.307 | 15.574 |

* Average Walk Times

CONFIDENTIAL AND PRIVILEGED

THIS IS A PRELIMINARY DRAFT. IT HAS BEEN PREPARED BASED ON PRELIMINARY INFORMATION AND ASSUMPTIONS. NO ONE
MAY RELY ON THIS DRAFT. IT IS SUBJECT TO CHANGE AS ADDITIONAL INFORMATION BECOMES AVAILABLE OR IS CLARIFIED

| Start of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Retrieve Cash Drawer | 3 | 0.239 | 0.263 | 0.070 | 0.209 | 0.342 | 0.212 | 0.215 | 0.224 | 0.239 | 0.290 | 0.321 | 0.331 |
| Wait to Pre Shift Paperwork | 3 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Pre Shift Paperwork | 3 | 1.175 | 1.046 | 0.605 | 0.387 | 1.576 | 0.465 | 0.544 | 0.781 | 1.175 | 1.376 | 1.496 | 1.536 |
| Wait To Get Money | 4 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Get and Count Money | 4 | 1.142 | 1.207 | 0.508 | 0.672 | 1.872 | 0.722 | 0.772 | 0.921 | 1.142 | 1.428 | 1.694 | 1.783 |
| Wait to Review Document(s) | 3 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 3 | 0.697 | 0.567 | 0.397 | 0.121 | 0.882 | 0.178 | 0.236 | 0.409 | 0.697 | 0.790 | 0.845 | 0.864 |
| Prep To Depart | 10 | 0.116 | 0.120 | 0.069 | 0.121 | 0.238 | 0.024 | 0.036 | 0.087 | 0.116 | 0.147 | 0.208 | 0.223 |
| Wait to Swipe In | 10 | 0.000 | 0.525 | 1.335 | 0.000 | 4.210 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 1.357 | 2.783 |
| Swipe In | 10 | 0.110 | 0.162 | 0.157 | 0.071 | 0.600 | 0.079 | 0.088 | 0.094 | 0.110 | 0.142 | 0.223 | 0.412 |
| Start of Shift Walk* | | 0.963 | | | 0.743 | 1.184 | | | | | | | |
| Total Start of Shift | | 4.443 | 3.890 | 3.141 | 2.214 | 10.903 | 1.681 | 1.891 | 2.516 | 3.480 | 4.172 | 6.144 | 7.932 |

| End of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wait to Review Document(s) | 5 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 5 | 0.439 | 0.635 | 0.587 | 0.044 | 1.471 | 0.081 | 0.118 | 0.229 | 0.439 | 0.990 | 1.279 | 1.375 |
| Wait to Post Shift Paperwork | 15 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Post Shift Paperwork | 15 | 0.464 | 0.415 | 0.365 | 0.000 | 1.023 | 0.000 | 0.000 | 0.000 | 0.464 | 0.660 | 0.877 | 0.939 |
| Count Cash Drawer | 14 | 0.000 | 0.181 | 0.554 | 0.000 | 2.076 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.283 | 0.960 |
| Wait To Drop Deposit | 15 | 0.000 | 0.000 | - | 0.000 | 0.000 | - | - | - | - | - | - | - |
| Drop Deposit | 15 | 0.133 | 0.136 | 0.138 | 0.000 | 0.380 | 0.000 | 0.000 | 0.000 | 0.133 | 0.217 | 0.337 | 0.377 |
| Replace Cash Drawer | 15 | 0.262 | 0.268 | 0.248 | 0.000 | 0.796 | 0.000 | 0.000 | 0.000 | 0.262 | 0.375 | 0.581 | 0.703 |
| Wait to Swipe Out | 16 | 0.000 | 0.020 | 0.044 | 0.000 | 0.134 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.091 | 0.117 |
| Swipe Out | 16 | 0.106 | 0.267 | 0.623 | 0.049 | 2.599 | 0.056 | 0.067 | 0.087 | 0.106 | 0.139 | 0.193 | 0.807 |
| End of Shift Walk* | | 0.000 | | 0.000 | 0.000 | 0.000 | | | | | | | |
| Total End of Shift | | 1.403 | 1.923 | 2.559 | 0.093 | 8.479 | 0.138 | 0.185 | 0.315 | 1.403 | 2.382 | 3.641 | 5.278 |
| Total Start and End of Shift | | 5.846 | 5.813 | 5.700 | 2.307 | 19.383 | 1.819 | 2.076 | 2.832 | 4.883 | 6.554 | 9.785 | 13.209 |

* Average Walk Times

CONFIDENTIAL AND PRIVILEGED

THIS IS A PRELIMINARY DRAFT. IT HAS BEEN PREPARED BASED ON PRELIMINARY INFORMATION AND ASSUMPTIONS. NO ONE
MAY RELY ON THIS DRAFT. IT IS SUBJECT TO CHANGE AS ADDITIONAL INFORMATION BECOMES AVAILABLE OR IS CLARIFIED

April 2016

The Illinois State Toll Highway Authority

| Start of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Retrieve Cash Drawer | 9 | 0.118 | 0.117 | 0.057 | 0.014 | 0.190 | 0.034 | 0.055 | 0.078 | 0.118 | 0.163 | 0.171 | 0.181 |
| Wait to Pre Shift Paperwork | 13 | 0.000 | 0.025 | 0.089 | 0.000 | 0.321 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.129 |
| Pre Shift Paperwork | 13 | 1.081 | 1.745 | 1.181 | 0.280 | 4.170 | 0.420 | 0.568 | 0.938 | 1.081 | 2.504 | 3.008 | 3.486 |
| Wait To Get Money | 14 | 0.000 | 0.456 | 1.080 | 0.000 | 3.945 | 0.000 | 0.000 | 0.000 | 0.000 | 0.189 | 1.163 | 2.207 |
| Get and Count Money | 14 | 2.286 | 2.771 | 1.474 | 0.950 | 5.739 | 1.211 | 1.398 | 1.575 | 2.286 | 3.588 | 4.853 | 5.403 |
| Wait to Review Document(s) | 12 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 12 | 0.194 | 0.386 | 0.514 | 0.042 | 1.922 | 0.074 | 0.104 | 0.149 | 0.194 | 0.354 | 0.666 | 1.250 |
| Prep To Depart | 18 | 0.090 | 0.163 | 0.186 | 0.031 | 0.797 | 0.033 | 0.035 | 0.054 | 0.090 | 0.196 | 0.331 | 0.416 |
| Wait to Swipe In | 15 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Swipe In | 15 | 0.111 | 0.128 | 0.060 | 0.044 | 0.264 | 0.061 | 0.077 | 0.097 | 0.111 | 0.135 | 0.220 | 0.234 |
| Start of Shift Walk* | | 1.962 | | | 0.752 | 3.172 | | | | | | | |
| Total Start of Shift | | 5.842 | 5.790 | 4.642 | 2.112 | 20.522 | 1.833 | 2.238 | 2.891 | 3.880 | 7.129 | 10.411 | 13.306 |

| End of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wait to Review Document(s) | 14 | 0.000 | 0.016 | 0.060 | 0.000 | 0.224 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.078 |
| Review Document(s) | 14 | 0.293 | 0.663 | 1.167 | 0.000 | 4.600 | 0.053 | 0.110 | 0.200 | 0.293 | 0.522 | 0.966 | 2.334 |
| Wait to Post Shift Paperwork | 20 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Post Shift Paperwork | 20 | 0.592 | 0.955 | 1.086 | 0.000 | 4.551 | 0.120 | 0.134 | 0.329 | 0.592 | 1.021 | 1.757 | 3.120 |
| Count Cash Drawer | 21 | 2.663 | 2.608 | 0.626 | 1.195 | 3.344 | 1.665 | 2.135 | 2.443 | 2.663 | 2.883 | 3.280 | 3.312 |
| Wait To Drop Deposit | 21 | 0.000 | 0.000 | - | 0.000 | - | - | - | - | - | - | - | - |
| Drop Deposit | 21 | 0.369 | 0.370 | 0.186 | 0.000 | 0.759 | 0.000 | 0.217 | 0.299 | 0.369 | 0.457 | 0.621 | 0.694 |
| Replace Cash Drawer | 20 | 0.081 | 0.140 | 0.151 | 0.000 | 0.604 | 0.023 | 0.029 | 0.045 | 0.081 | 0.160 | 0.338 | 0.386 |
| Wait to Swipe Out | 21 | 0.000 | 0.010 | 0.031 | 0.000 | 0.106 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.097 |
| Swipe Out | 21 | 0.099 | 0.122 | 0.057 | 0.063 | 0.308 | 0.080 | 0.080 | 0.088 | 0.099 | 0.142 | 0.165 | 0.228 |
| End of Shift Walk* | | 0.000 | | | | 0.000 | | | | | | | |
| Total End of Shift | | 4.097 | 4.883 | 3.364 | 1.258 | 14.497 | 1.941 | 2.706 | 3.405 | 4.097 | 5.186 | 7.125 | 10.247 |
| Total Start and End of Shift | | 9.939 | 10.674 | 8.006 | 3.370 | 35.019 | 3.774 | 4.944 | 6.296 | 7.977 | 12.316 | 17.536 | 23.553 |

* Average Walk Times

CONFIDENTIAL AND PRIVILEGED

THIS IS A PRELIMINARY DRAFT. IT HAS BEEN PREPARED BASED ON PRELIMINARY INFORMATION AND ASSUMPTIONS. NO ONE
MAY RELY ON THIS DRAFT. IT IS SUBJECT TO CHANGE AS ADDITIONAL INFORMATION BECOMES AVAILABLE OR IS CLARIFIED

April 2016

The Illinois State Toll Highway Authority

| Start of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Retrieve Cash Drawer | 12 | 0.085 | 0.099 | 0.065 | 0.031 | 0.234 | 0.034 | 0.036 | 0.049 | 0.085 | 0.121 | 0.192 | 0.214 |
| Wait to Pre Shift Paperwork | 14 | 0.000 | 0.017 | 0.063 | 0.000 | 0.235 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.082 |
| Pre Shift Paperwork | 14 | 2.373 | 2.230 | 1.185 | 0.394 | 4.386 | 0.425 | 0.584 | 1.459 | 2.373 | 2.973 | 3.470 | 3.924 |
| Wait To Get Money | 14 | 0.000 | 0.037 | 0.098 | 0.000 | 0.327 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.136 | 0.241 |
| Get and Count Money | 14 | 2.157 | 2.292 | 1.293 | 1.025 | 6.473 | 1.150 | 1.344 | 1.650 | 2.157 | 2.442 | 2.515 | 3.902 |
| Wait to Review Document(s) | 7 | 0.000 | 0.000 | 0.000 | - | - | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 7 | 0.565 | 0.602 | 0.564 | 0.039 | 1.683 | 0.064 | 0.088 | 0.195 | 0.565 | 0.768 | 1.195 | 1.439 |
| Prep To Depart | 15 | 0.081 | 0.131 | 0.140 | 0.039 | 0.429 | 0.000 | 0.008 | 0.026 | 0.081 | 0.175 | 0.356 | 0.426 |
| Wait to Swipe In | 0 | - | - | - | - | - | - | - | - | - | - | - | - |
| Swipe In | 0 | - | - | - | - | - | - | - | - | - | - | - | - |
| Start of Shift Walk* | | 2.206 | - | - | 1.087 | 3.325 | | | | | | | |
| Total Start of Shift | | 7.468 | 5.407 | 3.408 | 2.576 | 17.091 | 1.672 | 2.061 | 3.379 | 5.262 | 6.479 | 7.865 | 10.228 |

| End of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wait to Review Document(s) | 1 | 0.000 | 0.000 | - | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 1 | 0.230 | 0.230 | - | 0.230 | 0.230 | 0.230 | 0.230 | 0.230 | 0.230 | 0.230 | 0.230 | 0.230 |
| Wait to Post Shift Paperwork | 14 | 0.000 | 0.021 | 0.077 | 0.000 | 0.288 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.101 |
| Post Shift Paperwork | 14 | 0.986 | 1.165 | 0.622 | 0.464 | 2.379 | 0.497 | 0.528 | 0.679 | 0.986 | 1.609 | 2.014 | 2.187 |
| Count Cash Drawer | 14 | 1.933 | 2.065 | 0.675 | 0.958 | 3.463 | 1.176 | 1.348 | 1.714 | 1.933 | 2.276 | 2.963 | 3.207 |
| Wait To Drop Deposit | 14 | 0.000 | 0.000 | - | - | 0.000 | - | - | - | - | - | - | - |
| Drop Deposit | 14 | 0.363 | 0.405 | 0.181 | 0.184 | 0.839 | 0.225 | 0.251 | 0.278 | 0.363 | 0.440 | 0.634 | 0.713 |
| Replace Cash Drawer | 11 | 0.111 | 0.108 | 0.060 | 0.011 | 0.185 | 0.021 | 0.031 | 0.063 | 0.111 | 0.152 | 0.177 | 0.181 |
| Wait to Swipe Out | 0 | - | - | - | - | - | - | - | - | - | - | - | - |
| Swipe Out | 0 | - | - | - | - | - | - | - | - | - | - | - | - |
| End of Shift Walk* | | 0.000 | - | - | 0.000 | 0.000 | | | | | | | |
| Total End of Shift | | 3.623 | 3.993 | 1.614 | 1.847 | 7.384 | 2.150 | 2.389 | 2.966 | 3.623 | 4.707 | 6.019 | 6.618 |
| Total Start and End of Shift | | 11.091 | 9.401 | 5.022 | 4.423 | 24.475 | 3.823 | 4.450 | 6.345 | 8.885 | 11.186 | 13.883 | 16.846 |

* Average Walk Times

CONFIDENTIAL AND PRIVILEGED

THIS IS A PRELIMINARY DRAFT. IT HAS BEEN PREPARED BASED ON PRELIMINARY INFORMATION AND ASSUMPTIONS. NO ONE
MAY RELY ON THIS DRAFT. IT IS SUBJECT TO CHANGE AS ADDITIONAL INFORMATION BECOMES AVAILABLE OR IS CLARIFIED

The Illinois State Toll Highway Authority

April 2016

| Start of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Retrieve Cash Drawer | 12 | 0.194 | 0.176 | 0.062 | 0.098 | 0.269 | 0.099 | 0.100 | 0.120 | 0.194 | 0.211 | 0.255 | 0.263 |
| Wait to Pre Shift Paperwork | 15 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Pre Shift Paperwork | 15 | 0.287 | 0.533 | 0.501 | 0.031 | 1.625 | 0.089 | 0.123 | 0.152 | 0.287 | 0.802 | 1.251 | 1.485 |
| Wait To Get Money | 16 | 0.000 | 0.013 | 0.036 | 0.000 | 0.108 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.052 | 0.105 |
| Get and Count Money | 16 | 1.465 | 1.818 | 1.269 | 0.289 | 4.945 | 0.307 | 0.518 | 1.216 | 1.465 | 2.123 | 3.522 | 4.290 |
| Wait to Review Document(s) | 4 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 4 | 0.302 | 0.319 | 0.241 | 0.060 | 0.613 | 0.081 | 0.103 | 0.167 | 0.302 | 0.454 | 0.550 | 0.582 |
| Prep To Depart | 15 | 0.095 | 0.102 | 0.075 | 0.032 | 0.312 | 0.035 | 0.038 | 0.047 | 0.095 | 0.127 | 0.175 | 0.232 |
| Wait to Swipe In | 0 | - | - | - | - | - | - | - | - | - | - | - | - |
| Swipe In | 0 | - | - | - | - | - | - | - | - | - | - | - | - |
| Start of Shift Walk* | | 2.240 | - | - | 1.167 | 3.314 | - | - | - | - | - | - | - |
| Total Start of Shift | | 4.583 | 2.962 | 2.185 | 1.678 | 11.186 | 0.611 | 0.882 | 1.702 | 2.343 | 3.718 | 5.806 | 6.957 |

| End of Shift Activities | N | Median | Mean | Stdev | Min | Max | 5%ile | 10%ile | 25%ile | 50%ile | 75%ile | 90%ile | 95%ile |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wait to Review Document(s) | 9 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Review Document(s) | 9 | 0.317 | 0.487 | 0.477 | 0.117 | 1.614 | 0.125 | 0.134 | 0.201 | 0.317 | 0.602 | 0.959 | 1.286 |
| Wait to Post Shift Paperwork | 23 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 | 0.000 |
| Post Shift Paperwork | 23 | 0.839 | 0.914 | 0.620 | 0.112 | 2.723 | 0.217 | 0.325 | 0.505 | 0.839 | 1.036 | 1.637 | 2.127 |
| Count Cash Drawer | 11 | 1.316 | 1.763 | 1.603 | 0.000 | 5.717 | 0.000 | 0.000 | 0.921 | 1.316 | 2.127 | 2.938 | 4.328 |
| Wait To Drop Deposit | 24 | 0.000 | 0.000 | - | - | - | - | - | - | - | - | - | - |
| Drop Deposit | 24 | 0.326 | 0.355 | 0.255 | 0.000 | 1.367 | 0.133 | 0.152 | 0.208 | 0.326 | 0.431 | 0.503 | 0.523 |
| Replace Cash Drawer | 21 | 0.170 | 0.237 | 0.132 | 0.047 | 0.491 | 0.105 | 0.108 | 0.138 | 0.170 | 0.353 | 0.422 | 0.464 |
| Wait to Swipe Out | 0 | - | - | - | - | - | - | - | - | - | - | - | - |
| Swipe Out | 0 | - | - | - | - | - | - | - | - | - | - | - | - |
| End of Shift Walk* | | 0.000 | 0.000 | - | 0.000 | 0.000 | - | - | - | - | - | - | - |
| Total End of Shift | | 2.968 | 3.756 | 3.087 | 0.275 | 11.911 | 0.580 | 0.719 | 1.973 | 2.968 | 4.549 | 6.460 | 8.728 |
| Total Start and End of Shift | | 7.550 | 6.717 | 5.272 | 1.953 | 23.097 | 1.190 | 1.601 | 3.675 | 5.310 | 8.267 | 12.265 | 15.685 |

* Average Walk Times

CONFIDENTIAL AND PRIVILEGED

THIS IS A PRELIMINARY DRAFT. IT HAS BEEN PREPARED BASED ON PRELIMINARY INFORMATION AND ASSUMPTIONS. NO ONE MAY RELY ON THIS DRAFT. IT IS SUBJECT TO CHANGE AS ADDITIONAL INFORMATION BECOMES AVAILABLE OR IS CLARIFIED

# Exhibit H

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHELLY STIVERS, on behalf of herself and all other similarly situated persons, known and unknown, | |
| Plaintiff, | No. 15-cv-09030 |
| v. | Judge Matthew F. Kennelly<br>Magistrate Judge Maria Valdez |
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY, | |
| Defendant. | |

## ORDER OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT

This matter coming before the Court on Plaintiff's Agreed Motion for Preliminary Approval of Class Action Settlement, IT IS HEREBY ORDERED:

1) The parties' proposed class action settlement in this case is preliminarily fair, reasonable, and adequate, and meets all of the requirements of Rule 23 as a class action for settlement purposes.

2) For purposes of settlement only, a class is certified pursuant to Fed. R. Civ. P. 23 consisting of:

> All individuals who were employed by Illinois State Toll Highway as a toll collector and/or senior toll collector at any time during the period of October 13, 2012 until March 14, 2016.

3) Plaintiff Shelly Stivers is appointed as the class representative.

4) Bradley Manewith and Marc J. Siegel of Siegel & Dolan Ltd. are appointed as counsel for the settlement class.

5) Simpluris, Inc. is appointed as the Class Administrator to serve the Court in administering the notice, claims process, and disbursement of the Settlement Fund if the Court grants final approval of the settlement after the fairness hearing, as provided in the Settlement Agreement.

6) The form and content of the Notice of Proposed Class Action Settlement and Claim Form and the proposed plan for notification of Settlement Class Members are adequate, proper,

and comports with due process. The Notice and Claim Form are to be sent out to class members as provided in the motion.

7) The final fairness hearing is scheduled for _____, 2016 at _____.

8) Counsel for the parties are hereby authorized to jointly use all reasonable procedures in connection with approval and administration of the settlement that are not materially inconsistent with this Order of the Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the Notice and Claim Form that they jointly agree are reasonable or necessary.

ENTERED: _____, 2016

_____
Honorable Matthew F. Kennelly
United States District Court Judge

2